RURAL INDEPENDENT SCHOOL DISTRICT OF EDEN, Appellant,
v. VENTURA CONSOLIDATED INDEPENDENT SCHOOL
DISTRICT et al., Appellees.

**SCHOOLS AND SCHOOL DISTRICTS:** Consolidated Districts—Size of Remaining Corporation—Prohibition—"Four Government Sections" Does Not Include Unsurveyed Portion Covered by Lake. In determining the amount of land to be left in a school district, from which land has been taken to form a consolidated district, under the provisions of Section 2794-a, Code Supplement, 1913, that no school corporation from which said territory is taken shall, after the change, contain less than "four government sections," and so situated as to form a suitable school corporation, the unsurveyed portion of certain sections covered by a lake cannot be used in making up the necessary remaining "four sections," where the school district from which the land was taken did not extend beyond the shore line of the lake.

*Appeal from Cerro Gordo District Court.*—M. F. EDWARDS, Judge.

APRIL 8, 1919.

THE plaintiff is an independent school corporation; the defendant, a consolidated independent school district. The action is brought to restrain the defendant from exercising any jurisdiction over any portion of plaintiff's territory, on the theory that, in the organization of the defendant district, it took territory from the plaintiff district, and did not leave to the plaintiff district four government sections, as required by Section 2794-a of the Supplement to the Code, 1913.—*Reversed.*

*Senneff, Bliss, Witwer & Senneff,* for appellant.

*Blythe, Markley, Rule & Smith,* and *Wichman & Hastings,* for appellees.

GAYNOR, J.—This action is brought by the plaintiff, a

rural independent school district, to restrain the defendant, a consolidated independent school district, from exercising jurisdiction over a certain portion of its territory. The plaintiff district, prior to the organization of the defendant consolidated independent district, had within its boundary all of Section 28, excepting the southwest quarter of the northwest quarter, all of 27, the west half of 26, all of 33, all of 34, and the west half of 35, and all territory lying south of Clear Lake in Sections 21, 22, and 23. The territory taken from the plaintiff district by the defendant district, and by it incorporated into the Ventura Consolidated Independent School District, is the southwest quarter of 34, the southeast quarter of 33, the west half of 33, the southwest quarter of 28, and the northwest quarter of the southeast quarter of 28, and the northwest quarter of 28. This left in the plaintiff district, after the consolidated independent district was formed, only the northeast quarter of 28; the east half of the southeast quarter of 28; the southwest quarter of the southeast quarter of 28; all of 27; the west half of 26; the northeast quarter of 33; the north half of 34; the southeast quarter of 34; the west half of 35, and the land in 21, 22, and 23 lying south of Clear Lake, containing 290 acres, making, in all, 2,490 acres over which it could exercise jurisdiction for school purposes. These figures are made on the assumption that each section left in the district contained 640 acres, and as showing the actual acreage left subject to assessment for school purposes. See plat herewith submitted.

In May, 1917, defendant district was organized as the Ventura Consolidated Independent School District, and the other defendants are its officers. It was organized under Section 2794-a of the Code Supplement of 1913. No question is made as to its organization. For the purposes of this case, we may assume that it was properly organized under the provisions of that statute, and contains not less

than 16 sections. We have nothing to do with the sufficiency of the organization of the defendant district, or whether or not, in the organization, it complied with all the requirements of the statute above referred to. The only complaint here is that, in the organization of the defendant district, it took more territory from the plaintiff district than it had a right to take, under the provisions of Section 2794-a, under which it was organized. In the organization of a consolidated independent district, territory is taken from other districts already existing, to create the consolidated independent school district. This statute provides:

"No school corporation from which territory is taken to form such a consolidated independent corporation shall, after the change, contain less than four government sec-

tions, which territory shall be contiguous and so situated as to form [that is, to leave] a suitable corporation."

Plaintiff's contention is that the defendant, in organizing its district, took from the plaintiff so much of its territory that there were not left four government sections over which it might exercise jurisdiction for school purposes; that the taking was, therefore, wrongful, and by the taking it acquired no rights, because the taking was in violation of the very statute under which the defendant district was organized.

Assuming that the sections originally in plaintiff's district were full sections, containing 640 acres, and assuming that the sections left in plaintiff district are all full sections (and we must assume this, unless the contrary appears), we find that, after the taking by the defendant district from the plaintiff of this territory, the plaintiff was left with about 70 acres less than four government sections. This is assuming, however, that no part of what is called 21, 22, and 23 is a part of the plaintiff district, except such portions as lie south of Clear Lake. We held, in *Powers v. Harten,* 183 Iowa 764, that the word "section," as used in the statute, meant a government section,—a subdivision of land staked out and marked by the government as a section, whether it contained more or less than 640 acres; and we held that the fact that a section is surveyed and staked out as a section makes it a "section," in contemplation of the statute, though it contains less than 640 acres; and that the fact that it contained less than 640 acres did not make it fractional. In that case, it was conceded that there were 16 sections in the consolidated district, but it was said that the actual measurement of the sections showed they did not contain, each, the full number of acres required to constitute a section; that, as the statute required not less than 16 sections to make a consolidated school district, yet it was not sufficient to meet the requirements of the stat-

ute unless these 16 sections each contained 640 acres. This contention was held bad. Here, however, we are confronted with a different situation.

The statute provides that, in the organization of a consolidated school district, and in the taking of land to make up the quantum of the district, it must not take from adjoining districts so as to reduce the existing district to less than four sections: that is, less than four government sections. Or, in other words, the consolidated independent district, in taking territory from other districts, must leave the district from which the territory is taken with not less than four government sections, and so situated as to form a suitable school corporation. That is, it must leave the district from which it takes territory with not less than four government sections of land so situated as to form a suitable corporation,—that is, a suitable school corporation. It evidently was the thought of the legislature that four sections were essential to make a suitable school corporation, and that less would make it unsuitable for that purpose.

It will be noted from the plat that Clear Lake lies immediately north of plaintiff district. It will be noted that Sections 28, 27, 26, 33, and 35 were surveyed as government sections, and so staked off; that, north of 26, 27, and 28, the south shores of Clear Lake meandered, and the government found that, south of the lake and north to 28, 27, and 26, there were but 7¼ government 40's. Clear Lake is a large body of water. It is not pretended that 21, 22 and 23 were surveyed beyond the shore line; that they were ever surveyed, or staked out as government sections, subject to sale, north of the south shore line. True, a meandering line is not a boundary line. The government undertook to survey, and did survey and mark out, the land south of the lake, and fixed the amount of land therein included. The real controversy here centers about the contention made by the

defendant, that, though the survey was made south of the lake, and the amount of territory indicated was south of the lake and north of 26, 27, and 28, yet plaintiff must be charged with having control and jurisdiction for school purposes over all of 22 and 23, and it assumes that all of 22 and 23 still belong to the plaintiff for school purposes, and are a part of the territory over which plaintiff is entitled to assert jurisdiction; and so defendants say they did leave the plaintiff more than four government sections. It appears, however, that the only part of Sections 22 and 23 over which any control can be exercised for school purposes, is that portion south of the lake. There is such a thing as fractional government sections. They are known to and recognized by the government in its subdivision of lands for sale. In the absence of any showing to the contrary, the government survey must prevail; and this would leave in 21, 22, and 23 only 290 acres subject to the jurisdiction of the plaintiff for school purposes; and this, added to the balance that is left to the plaintiff, leaves the plaintiff with less than four government sections. This is not disputed, unless we should assume, as contended for by the defendant, that 22 and 23 were surveyed into sections, and can be treated as full sections and as a part of plaintiff district. We cannot say this, and so plaintiff district is reduced below the minimum. As we said in the *Powers* case, supra, "Fractional sections are caused by lakes and streams and reservations." We may have been a little inaccurate in saying "and by township lines, when the township is more or less than six miles in extent in one or both dimensions." When the legislature said "not less than four government sections," its mandate was not satisfied by leaving but four sections, part of which was fractional. When the government caused the public domain to be surveyed, it was for the purpose of dividing it up into parts, and these parts were generally designated "sections." It was undoubtedly the intention and purpose

of the government that each section should contain 640 acres; but actual experience shows that this intention and purpose were not fully carried out by its surveyors, and many of the divisions staked out and marked as sections did not contain the contemplated acreage. Some contained more, and some contained less. Still, the government accepted the return of the surveyors as complying with its requirements, and the divisions became fixed and known as sections, and, in common parlance, the subdivisions as sections. The government, however, recognized that often obstacles would be met with in surveying which would prevent its officers from dividing the territory into sections containing the number of acres into which the government contemplated they should be divided,—that natural obstacles would be met with by its surveyors that made it impossible for full sections to be marked off; and so surveys were made up to these obstacles, and fractional pieces of the contemplated section were surveyed and staked out and shown as fractional. Surveys are fractional when the outer boundary lines of the territory surveyed cannot be carried out to include the full quantum contemplated, on account of the obstacles, such as watercourses, territory within Indian reservations, etc. It was the original and general purpose of the government, in surveying the public domain, to divide all territory into sections containing 640 acres. This became, of course, impracticable, sometimes, because of natural obstacles in the way of carrying it out. A surveyor, after laying out his township, found that, in the subdivision of the township into sections, there were certain natural obstacles which prevented him from subdividing it into sections containing 640 acres. The matter here considered was discussed in *Wilson v. Hoffman,* 70 Mich. 552 (38 N. W. 558); *Goltermann v. Schiermeyer,* 111 Mo. 404 (19 S. W. 484).

There is no competent evidence that the plaintiff dis-

trict, as originally formed, and as it existed at the time defendant undertook to appropriate a portion of its territory, extended beyond the south shore line of Clear Lake. We cannot assume that the school curriculum provided for instruction in the art of swimming, or that school children lived in or upon the water, or that the land under the water was subject to taxation for school purposes. All the record indicates that the north line of plaintiff district was the south water line of the lake. Assuming that plaintiff district did not extend beyond the south line of the lake, we must find that there is not left in the district, after the organization of the consolidated district, the quantum of land provided for by the statute, and that the court, therefore, erred in dismissing plaintiff's petition. Plaintiff was entitled to the relief demanded, and the cause is—*Reversed.*

LADD, C. J., EVANS and STEVENS, JJ., concur.