STATE OF IOWA ex rel. A. I. MARTINSON et al., Appellants, v.
CONSOLIDATED INDEPENDENT SCHOOL DISTRICT OF
SCARVILLE et al., Appellees.

SCHOOLS AND SCHOOL DISTRICTS: Consolidated Districts—Jurisdiction to Divide Districts. The county superintendent has no jurisdiction to "fix and determine" the boundary lines of a proposed consolidated independent school district, when the petition therefor proposes to *divide* existing school corporations. Under such circumstances, the petition should be passed on to the county board of education, which has sole jurisdiction to fix boundaries in such cases. (Sec. 2794-a, Code Suppl. Supp., 1915; 38 G. A., Ch. 149.)

SCHOOLS AND SCHOOL DISTRICTS: Consolidated Districts—Separate Vote. On the proposition to merge several school corporations into a consolidated independent school district, no separate ballot is authorized in a school corporation which has a population in excess of 200, but no town of 200 population. (Sec. 2794-a, Code Suppl. Supp., 1915; 38 G. A., Ch. 149.)

*Appeal from Winnebago District Court.*—JOSEPH J. CLARK, Judge.

JANUARY 24, 1921.

ACTION in quo warranto to test the legality of the formation of the Consolidated Independent School District of Scarville, Iowa, and to oust its officers-elect. Judgment for defendants. Plaintiffs appeal.—*Reversed.*

*John F. D. Meighen, Bennett O. Knudson,* and *Kingland, Dakin & Thonn,* for appellants.

*Tom Boynton* and *Senneff, Bliss, Witwer & Senneff,* for appellees.

DE GRAFF, J.—Plaintiffs are taxpayers and voters residing within the proposed consolidated district, with the exception of plaintiff Kvale, who is a taxpayer and voter residing in the excluded area of a subdistrict which was divided by the boundary line of the proposed district. A petition for the establishment of the Consolidated Independent School District of Scarville, signed by the required number of voters and accompanied by the required affidavit, was filed in the office of the county superintendent. The proposed school district included all of the school corporation in which the incorporated town of Scarville is situated. It also included the whole of certain subdistricts and portions of five other subdistricts which were split, part of each being included, and the remainder excluded. The incorporated town of Scarville is partly in Logan Township and partly in Norway Township.

1. SCHOOLS AND SCHOOL DISTRICTS: consolidated districts: jurisdiction to divide districts.

The Independent School District of Scarville not only contains within its limits all of the incorporated town of Scarville, but also certain contiguous territory. The remaining portion of Norway Township not in the Independent School District of Scarville constituted a school corporation divided into various districts. The remaining portion of Logan Township not within the limits of the Independent School District of Scarville also constituted a school corporation divided into various subdistricts.

The county superintendent published in the Lake Mills Graphic a notice to the public, relative to the place where and date when objections to the petition should be filed. No objections were filed, and the county superintendent entered an order fixing the boundaries of the proposed consolidated school district, which order did not change the boundaries as defined and recited in the petition.

Subsequently, the county superintendent published in the newspaper aforesaid a notice of election on the issue of the

establishment of said district. An election was held in the incorporated town of Scarville, and a majority of the votes cast were in favor of the establishment of the proposed consolidated school district. But one ballot box was used. The Independent School District of Scarville at that time had a population of more than 200, and within its limits was the incorporated town, with a population of less than 200.

Following the election, the county superintendent published notice of election for school officers, and, on the day appointed, the persons named as defendants in this action received a majority of the votes cast, and were declared elected. There is a county board of education in Winnebago County, but it took no part in the creation of the consolidated district in question, and did not, at any time after the petition was filed, either on hearing or otherwise, fix or determine the boundaries of the proposed district.

Summarizing the errors relied upon for reversal, the primary contentions of appellant are: (1) That the action taken in the establishment of the Consolidated Independent School District of Scarville was null and void, in that the boundary lines thereof did not conform to the boundary lines of the subdistricts then established. (2) That the Independent School District of Scarville, which had a population of over 200, and contained the town of Scarville, was by vote incorporated into the Consolidated Independent School District of Scarville, and, in voting on the proposition for the establishment of said district, the ballots of the electors outside and inside the limits of the Independent School District of Scarville were not cast and counted separately, as required by law.

With the correctness of the rulings of the trial court on these two propositions, this opinion will concern itself.

I. Under the provisions of our statute prior to the enactment of Chapter 149, Acts of the Thirty-eighth General Assembly, no definite limitations are found relative to boundary lines of proposed consolidated school districts. A district would be created in saw-tooth formation, so that those favoring would be included, and those opposed left out, if necessary to secure the required number of votes for consolidation. The geography of the proposed district could be arranged so as to take part of a

farm for taxation, and omit the residence of the owner of said farm. The absence of statutory limitations in these and other matters finally stirred the public mind, by reason of the bitterness and the feeling engendered in many school elections of this character.

Recognizing that the basic principle of all social and political action is the greatest good for the greatest number, and to correct certain abuses arising from school district gerrymandering, the thirty-seventh general assembly enacted the initial limitation in this particular, by providing: '

"In the formation of such consolidated school corporation the boundary lines shall conform to those of corporations or districts already established, so far as practicable, and in case the boundary of such district be a public highway, then the said consolidated district may include such tracts of 160 acres or less as are contiguous to the said highway and the county superintendent after a full and fair hearing gives his approval." Chapter 432, Acts of the Thirty-seventh General Assembly.

This statute did not fully prevent the abuses which it aimed to correct; but, by the enactment of Chapter 149, Acts of the Thirty-eighth General Assembly, the matter of boundary lines for proposed consolidated school districts was definitely settled. The chapter reads in part as follows:

"In the formation of such consolidated school corporation the boundary lines shall conform to those of school corporations or subdistricts already established, provided however that the county board of education on hearing, may fix other boundaries than herein prescribed, when because of meandering streams, irregular boundaries of existing subdistricts or school corporations or the location of highways, the welfare of the consolidated district and adjoining districts may be better served. In case the boundary of such subdistricts be a public highway then the said consolidated district may include such tracts of 160 acres or less as are contiguous to the said highway."

Clearly, the provisions of this statute are mandatory. Its mandate and limitation must be respected, and neither petitioners, county superintendent, nor electors can waive or set aside this provision, in defining the boundary lines of a proposed consolidated school district. Its English is simple, the intent is

plain, and the cause of its enactment is understood. Under its provisions, the county superintendent is without jurisdiction to fix and determine the boundary lines of a proposed consolidated school district so as to split existing subdistricts.

"When a fair interpretation of a statute which directs acts or proceedings to be done in a certain way shows that the legislature intended a compliance with such provision to be essential to the validity of the act or proceeding, or when some antecedent and prerequisite conditions must exist prior to the exercise of power, or must be performed before certain other powers can be exercised, then the statute must be regarded as mandatory." 36 Cyc. 1158.

We are not saying that the county superintendent does not have certain powers in fixing and determining boundary lines in certain instances. See *Brooker v. Ludlow,* 189 Iowa 760.

The petition for consolidation in the *Brooker* case did not divide any subdistricts. In the light of the facts pleaded, we said:

"We think the provisions of the statute requiring the boundaries of the proposed district to be described in the petition and published notice, and requiring one third of the qualified voters to sign the petition, are jurisdictional. Until these provisions are complied with, the county superintendent could not take jurisdiction of the matter, and until the notice was published, could not fix the boundaries. * * * The county superintendent has the right to establish the boundaries for consolidated school districts within the lines set out in the petition."

Under the present statute, there are three mandatory limitations upon the jurisdiction of the county superintendent to "fix and determine" boundary lines, namely: (1) He cannot reduce another school corporation to less than four sections. (2) The consolidated district must have at least 16 sections. (3) Boundary lines must conform to subdistricts or school corporations already established. See Chapter 149, Acts of the Thirty-eighth General Assembly; *Rural Ind. Sch. Dist. of Eden v. Ventura Cons. Ind. Dist.,* 185 Iowa 968; *Powers v. Harten,* 183 Iowa 764; *State v. Phillips,* 186 Iowa 1052.

The record in the instant case discloses that the county superintendent, by an order fixing boundary lines, did include

within the proposed consolidated district portions of Subdistricts Nos. 2, 3, and 4 in Norway Township and portions of Subdistricts Nos. 2 and 5 in Logan Township, the remaining portions of said subdistricts being excluded. The instant petition does not conform its recited boundary lines to the boundary lines of the then established and existing subdistricts. A petition not conforming to boundary lines as contemplated by the statute may not be approved by the county superintendent, but it is referable by him to the county board of education, and should be so referred. This gives the said board, prior to the publication of notice by the county superintendent, the opportunity to review, and to give its approval or disapproval of the boundary lines recited in said petition. The boundary lines of the proposed district which are set forth in the petition may be approved by the county superintendent when said boundary lines conform to those of school corporations or subdistricts already established, but a notice could not be published by him for the purpose of fixing place and time for objections, when the boundary lines of the proposed consolidated district do not so conform. The approval by the board of education is a condition precedent. It may well be assumed that the county superintendent, upon a review of the petition and a study of the proposed boundary lines, would observe that the boundary lines of the then existing school corporations or subdistricts were not respected, and in such event, it should be referred to the board of education for approval or disapproval under the power conferred by the statute.

Under the present record, the county board of education having had no hearing, and having made no order, the evidence offered by the defendants as to the physical condition and topography of the land was immaterial and incompetent.

The jurisdiction to divide or split existing subdistricts, in fixing the boundary lines of a consolidated school district, is solely within the powers conferred by statute on the county board of education.

In the instant case, the defendant county superintendent may refer the petition filed to the county board of education for its action in the premises, and upon its findings, if favorable, give notice by publication, as required by law. In other words,

it is not necessary to file a new petition, but original proceedings must be had from this point.

II.  Under the provisions of Chapter 149, Acts of the Thirty-eighth General Assembly, the method of voting is prescribed when ''a school corporation containing a city, town or village with a population of 200 or more inhabitants'' is proposed to be included within the consolidated independent school district. Appellant challenges the construction of this provision by the trial court. The point is not well taken.

2. SCHOOLS AND SCHOOL DISTRICTS: consolidated districts: separate vote.

The proposed Consolidated Independent ·District of Scarville absorbed the Independent School District of Scarville, containing the town of Scarville, which town had less than 200 inhabitants.  The Independent School District of Scarville had a population in excess of 200 inhabitants.  Under these facts, a majority of the votes cast by the electors inside the Independent District and a majority of the votes outside said Independent District were not required to insure the legal creation of the Consolidated Independent School District of Scarville.  This necessarily would allow the use of one ballot box.

In the case of *State v. McChesney,* 190 Iowa 731, we had occasion to construe the statutory provision involved in the instant case.  In opinion it is said:

''We think that the statute as it now stands is plain and unambiguous, and that a forced or strained construction ought not to be indulged in, to meet the exigencies of the particular situation now presented.''

For the reason stated in the first division of this opinion, the order and judgment of the trial court are—*Reversed.*

EVANS, C. J., WEAVER, STEVENS, and ARTHUR, JJ., concur.

PRESTON, J., dissents on the first point.