E. BURTSEL COOK et al., Appellees, v. CONSOLIDATED SCHOOL DISTRICT OF TRURO et al., Appellants.

STATE OF IOWA ex rel. E. BURTSEL COOK et al., Appellees, v. CONSOLIDATED SCHOOL DISTRICT OF TRURO et al., Appellants.

No. 47401.

(Reported in 38 N. W. 2d 265)

JUNE 14, 1949.

Wisdom & Wisdom, of Des Moines, for appellants.

R. E. Killmar and Ward W. Reynoldson, of Osceola, for appellees.

BLISS, J.—The defendant is a consolidated independent school district which, at the inception of the proceedings involved herein, contained approximately sixty sections of land in the counties of Madison, Warren and Clarke. While it is designated in the title of the case as "The Consolidated School District etc.," it also in the record calls itself "The Consolidated Independent School District etc.," and the petitions which it prepared for circulation among, and signing by, the electors, were addressed to the "President and Board of Directors of the Independent School District of Truro, counties of Madison, Warren and Clarke." The important fact is, that it is a consolidated school district and was no doubt so organized. We think it may also be called and

is a consolidated independent school district. For brevity, and to distinguish it from any other school district, we will speak of it as the consolidated district.

The geography of the situation will be helpful. Clarke county lies directly south of and abuts on the east half of Madison county and the west half of Warren county. The northeast corner of Washington township in Clarke county and the southeast corner of Ohio township in Madison county and the southwest corner of Virginia township in Warren county, all converge and coincide at the same point. The consolidated district has an irregular boundary and sprawls over much territory, considerable part of which was annexed to the original district.

The school building is in the town of Truro—population about four hundred. The town occupies parts of Sections 15 and 16 in Ohio township and it is due north of and about three or four miles distant from the north line of Sections three and four in Washington township in Clarke county. The district occupies a part of South township which lies just north of Ohio township in Madison county, and part of Walnut township just west of Ohio township. In 1938 the Independent School District of Broad Horn in Warren county containing Sections 5, 6, 7 and 8 in Virginia township became a part of the defendant District, through the concurrent action of the two boards of directors. Litigation involving the annexation is reported in Peterson v. Independent Sch. Dist., 227 Iowa 110, 287 N.W. 275, and in Peterson v. Swan, 231 Iowa 745, 2 N.W. 2d 70. The northwest forty acres of Section 19 in Virginia township of Warren county was also attached to the defendant District.

Sometime later the defendant District, under the procedure prescribed by what is now chapter 276, Code of 1946, pertaining to consolidated school districts, sought to annex territory in Sections 1, 2, 3, 4, 9, 10, 11 and 12 in Madison township lying just west of Washington township in Clarke county. The Madison school township resisted the proceedings and the county boards of education of Madison, Warren and Clarke counties in joint session dismissed the petition for annexation. In February 1946, the litigants compromised the controversy, and by concurrent

action of the respective boards of the two districts four and one-half sections became a part of the consolidated district. The figure below is a tracing from Exhibit 6. The uppermost line of the tracing represents a part of the boundary between Madison and Clarke counties. The extreme right of the tracing represents the north-south boundary between Madison and Washington townships in Clarke county. The shaded portion shows the part annexed by the defendant District. The unshaded portion remains a part of Madison School Township.

Section 276.20, Code of 1946, provides that when territory is taken from a school corporation to form a consolidated school corporation the remaining sections "shall be so situated as to form a suitable corporation."

In February 1947, the defendants, by an election proceeding such as was used in the proceeding before us, annexed parts of Sections 34 and 33 of Walnut township, in Madison county.

The land which the defendants are attempting to annex in the appeal before us are Sections 1, 2, 11 and 12, which comprise subdistrict No. 1, and the east half of Sections 3 and 10, which are a part of subdistrict No. 2, all in Washington school township in Clarke county.

The rough plat here shown is improvised from exhibits and shows the territory involved. The top or north line of the plat is part of the boundary between Madison and Clarke counties. The heavy black mark extending north and south a quarter of a mile east of the west line of Sections 2 and 11 represents the road known as "County Trunk S." It is an all-weather road surfaced with crushed stone and extends from Truro south until it joins Primary Highway 69 about a half mile north of Osceola. The other parallel lines on the plat indicate unimproved, dirt roads, not to permanent grade, which are impassable in wet weather except with horse-drawn vehicles. The plaintiffs live or own land in the east part of subdistrict No. 1, and County Trunk S over which the school bus of the defendant District travels to the cen-

tral school at Truro is of little benefit to them in bad weather because of their difficulty in reaching it. This testimony respecting the dirt roads is not disputed.

Prior to February 27, 1947, the defendants prepared typewritten petitions directed to the president and board of directors of defendant District asking them to call a special election in the defendant District and in the above-described territory in Washington township, to submit to the voters residing therein the proposition:

"Shall an independent school district be formed consisting of the present School District of Truro, in Madison, Warren and Clarke Counties, in the State of Iowa (within which is included the town of Truro having a population of more than 100 residents), and the territory comprising Sections 1, 2, 11, 12 and the east half of Sections 3 and 10 of Twp. 73 N. R. 26 west of the 5th P. M. in Clarke County, Iowa?"

These petitions were circulated in the town of Truro and the territory contiguous thereto, including the territory in Washington township. Twelve resident electors of the town of Truro and two hundred thirty-eight resident electors of contiguous territory signed such petitions all on the 27th and 28th days of February, 1947. They were filed on said dates with the secretary of the defendant District. Each of its five directors, having waived "all notice of the time, place and purpose of a special meeting", met at the school building in Truro and canvassed the petitions. The board found that one petition was signed by eleven resident voters of the town of Truro, which had a population of over one hundred, and that the petition was a sufficient compliance with section 274.23 of the 1946 Code. The board then canvassed three other petitions of two hundred thirty-eight signers, who represented themselves as "electors residing in the territory above described, including territory both within and without said present school district of Truro, and outside the town of Truro, and that we constitute a majority of all the electors residing in the territory above described and outside said town:". The board found the signers were a majority of the resident electors in the territory described, apparently including the additional sections in Washington town-

ship. The board at this meeting fixed the election for March 17, 1947, and directed the secretary to post proper notices thereof. No notice was published as provided by section 276.11, Code of 1946.. In these proceedings, which were for the purpose of extending the limits of an *existing consolidated independent school district*, the board followed the provisions of sections 274.23 and 274.24, Code of 1946, for the original "formation" of an *independent city, town, or village, school district*, with contiguous territory, and disregarded statutory requirements for establishing or extending a consolidated independent district.

On March 11, 1947, plaintiffs filed their petition for an injunction against the proceedings of defendants. On March 14, 1947, the defendants petitioned the Supreme Court of Iowa against the plaintiffs herein and District Judge Miles for a writ of prohibition restraining the latter from proceeding under the petition for injunction filed in his court by the plaintiffs herein. On March 14, 1947, Chief Justice Wennerstrum ordered a writ of prohibition to issue directing Judge Miles not to enjoin the special election on March 17, 1947, but permitting him to proceed with the determination of any other issues involved in the injunction suit. On the following day, on stipulation of the parties to the evidence, and that the status quo of the existing school districts in Washington township should be preserved irrespective of the outcome of the election, Judge Miles made such a restraining order against the defendants.

The school election was held March 17, 1947, with polls open from 12 o'clock noon to 7 p.m., in accordance with five notices posted in the existing territory of the district and four posted in the territory sought to be added. The election records before us and the testimony establishes that the proposition voted on carried 17 to 0 in the town of Truro, 21 to 13 in the new territory to be added, and 11 to 0 in the old territory outside of Truro. The voting was done at Truro and a separate ballot box was used for each of the three territories noted just above, as provided by section 274.24, Code of 1946.

Plaintiffs' petition for injunction alleged many grounds for the relief asked but their chief ground for which they claim the proceedings are illegal and void is the failure of defendants to

proceed as required by the provisions of chapter 276 of the 1946 Code.

On March 27, 1947, defendants filed answer in two divisions. Division I was largely admissions and denials. They admitted all of the actions with which they were charged, including noncompliance with chapter 276, but denied that such provisions are exclusive. In Division II they alleged that they proceeded under the provisions of chapter 274 of the Iowa Code of 1946, specifying the various steps, including the holding of the election and its results. On plaintiffs' motion to strike and to make parts of this division more specific, defendants voluntarily withdrew Division II.

On September 2, 1947, after the county attorney had refused to begin quo warranto proceedings in the name of the state, plaintiffs, on order granted by the court, filed their petition in quo warranto as relators. Therein plaintiffs amplified and added to the allegations in the injunction petition but their contentions are unchanged. The same may be said of defendants' answer.

■ This court has repeatedly held that quo warranto is the exclusive remedy to test the legality of the organization of a school corporation. Nelson v. Consolidated Ind. Sch. Dist., 181 Iowa 424, 164 N.W. 874; Harvey v. Kirton, 182 Iowa 973, 164 N.W. 888; Haines v. Board of Directors, 184 Iowa 401, 164 N.W. 887, 167 N.W. 192; State ex rel. Ondler v. Rowe, 187 Iowa 1116, 175 N.W. 32; Hufford v. Herrold, 189 Iowa 853, 179 N.W. 53; Hughes v. Hugus, 193 Iowa 591, 187 N.W. 438.

There is little if any material controversy in the evidence or in the factual contentions. Plaintiffs complain of the gerrymandering tactics of defendants in the present and previous annexations by the defendant District. Plaintiffs asserted that defendants deliberately used the statutory proceedings which they did use and disregarded the provisions of chapter 276, though conceding their propriety, and although they knew plaintiffs were opposed to the former and favored the latter. Plaintiffs introduced evidence of the unimproved condition of the roads in the subdistricts, and that the road on the east township line at the north end was not even completed. They urged that the quarter sections of land in the east halves of Sections 3 and 10, readily

accessible to County Trunk S, were made a part of the proposed annexation by defendants just to secure the favorable votes of the electors living there. There was undenied testimony that the bus of the defendant District had hauled children of those electors to its school at Truro, without any arrangement therefor with the Washington school township board or any of its directors.

It was the conclusion of the able trial court that in the enlargement or extension of an existing or old school district by a vote of the electors, whether the district be an independent city, town, or village school corporation, the inevitable result with either type of school was the formation of a new school corporation, and that the proper statutory steps for forming or establishing a school corporation by vote of the electors should be followed. The statutory requirements to be followed would depend upon the type of school corporation. If it was an independent school district in a city, or a town, or a village with the required population, then Code sections 274.23 and 274.24 and any other requirements of chapter 274 of the 1946 Code should be followed. But if, as in the case at bar, the school being enlarged is a consolidated independent school, the applicable provisions of chapter 276 of the 1946 Code, entitled "Consolidated School Districts," should be followed.

In support of its conclusion that the enlargement of an existing school corporation was in fact the formation of a new corporation, the trial court referred to State ex rel. Stinman v. Spellman, 191 Iowa 1181, 1183, 1184, 183 N.W. 577, in which a consolidated independent school district had been originally formed by the consolidation of all the subdistricts in a township except a portion thereof which was an independent district. Later a petition was filed to annex the independent district to the consolidated district and thus form a new consolidated district under the provisions of the amended section 2794-a, of the 1915 Supplemental Supplement, the provisions of which are now in chapter 276 of the 1946 Code. The petition was approved by the county superintendent, and on appeal to the county board of education it was again approved. This court, in affirming, said:

"Technically, this is not the union of two districts, but the

organization of a new corporation for the purpose of conducting a central school as a consolidated district, which is required by law to furnish transportation for all rural pupils. * * * To hold that section 2794-a, as amended * * * is not applicable in all cases where it is the purpose to organize a school corporation of 16 sections or more for the purpose of conducting a central school would, in effect, make nugatory this law for many localities."

In Arnold v. Consolidated Ind. Sch. Dist., 173 Iowa 199, 200, 155 N.W. 278, the only issue was the law issue whether after a consolidated district had been formed under section 2794-a, of the 1913 Code Supplement, "there can be a further consolidation in said territory by petition presented to the school board of the consolidated district, bringing in additional territory and thus forming a new consolidated school district. Or, as appellees put it: Could there be a second use of the same method to add territory to the corporation, under Section 2794-a of the Supplement to the Code of 1907, as amended * * *?" Said section was the original Code section for the organization of consolidated independent school districts, now a part of chapter 276, Code of 1946.

The district court gave an affirmative answer to the question of the defendant-appellees, and this court affirmed. In the two cases above noted the facts were substantially identical with the facts in this case, and in each this court answered the very question now presented to it, as the appellees herein contend that it should be, and was, answered. In State ex rel. Kirchgatter v. Thompson, 190 Iowa 1160, 1166, 181 N.W. 434, 437, speaking of the Arnold case, supra, the court said: "There can be no doubt of the right of a consolidated district to reconsolidate and enlarge its territory, *provided that the proceedings are in accordance with the statute.*" (Italics added.)

The conclusion of the trial court is sound and the grounds on which it is based are reasonable and logical. When chapter 276 specifies the method for establishing a consolidated school district, which the statute also provides may be enlarged, why go back to chapter 274, and in particular to sections 274.23 and 274.24, which apply only to the *original formation of independent school districts in cities, towns and villages,* to adopt the procedural re-

754

quirements of those sections in order to enlarge a *consolidated independent district?* Why not employ the statutory proceedings of chapter 276 which the legislature enacted and intended for that purpose? The defendants have offered no sound reason for not doing so, and none appears to this court.

The movement back of the establishment of consolidated schools was prompted by definite reasons and purposes. It is essentially a rural school, in its territorial aspect, and it was intended and is maintained to give better school quarters and educational facilities to the children in rural territory. The city, town, and village independent schools were not ordinarily situated to furnish these advantages. They could be more effectively obtained by a consolidation of the numerous subdistricts into a single, compact, larger district, affording one taxing unit and a larger tax return. Its needs differed in particulars from those of the urban school, especially in the transportation of pupils. It may include urban territory or it may be entirely rural.

The bill for the organization of consolidated school districts was passed, and on April 5, 1906, was approved by the Thirty-first General Assembly, chapter 141, and we may note that it was designated as a "consolidated *independent* school district." Thereafter the provisions of the legislation were amended, revised, repealed, and added to—extensively by several General Assemblies, notably the Thirty-fourth General Assembly, chapter 143, effective by publication on March 28, 1911; the Thirty-fifth General Assembly, chapter 250, approved April 2, 1913; Thirty-sixth General Assembly, chapters 342 and 46, approved respectively April 17 and March 24, 1915; Thirty-seventh General Assembly, chapter 432, approved May 14, 1917; chapters 116, 149 and 277, respectively, Acts of Thirty-eighth General Assembly, approved on March 29, 1919, effective by publication on April 8, 1919, and on April 25, 1919; Thirty-ninth General Assembly, chapter 175, effective by publication on April 16, 1921. This legislation during the intervening years appeared as section 2794-a to -g, inclusive, of the 1913 Supplement and 1915 Supplemental Supplement to said Code. These sections were all in a general chapter, No. 14 of Title XIII, entitled "Of the System of Common Schools." In the Compiled Code of 1919 and Supple-

ments 1921 and 1923 thereto, which were compiled solely for the purpose of aiding in the revision which later appeared as the Code of 1924, the statutes relating to consolidated schools appeared in said Code as section 2524 (1 to 7) et seq.; and in the Supplements as sections 2524-a1 to 2524-a7 in the general chapter entitled "School Districts."

When the Code Commission was constituted and authorized to edit and codify the laws of Iowa by chapter 50, Acts of Thirty-eighth General Assembly, and later chapters, they were given quite broad authority and discretion in the work of revision. The Thirty-eighth General Assembly adopted the plan of the commission that the latter in the codification of such sections and chapters as it thought necessary should prepare bills as substitutes therefor. In this codification it prepared two hundred fifty-three Commissioners' Bills, which were submitted to the Extra Session of the Fortieth General Assembly, and until that session completed its work the commissioners worked side-by-side with the members of the assembly. (Code of 1924, pages vii to ix.)

With respect to the proper designation of the consolidated school there has been some variance and discussion in the cases. As already noted in the initial legislation (chapter 141, Acts of Thirty-first General Assembly) it was designated as a "consolidated independent school district." In all later legislation, hereinabove noted, the same designation was used, except in chapter 175, Acts of Thirty-ninth General Assembly. This chapter repealed all of section 2794-a of the 1915 Supplemental Supplement except subsection b thereof. In chapter 175 the word "independent" was not used in the name, but when said unrepealed subsection b was placed in chapter 19 of the 1921 and 1923 Supplements to the Compiled Code, it appeared as section 2524-a22 thereof, and the name "consolidated independent school corporation" appeared three times therein.

Among the numerous bills prepared by the Code Commission was Code Commissioners' Bill No. 100, prepared by the chairman of the Commission, James H. Trewin, on the subject: "Education—School Districts." In his preparation of the bill he took chapter 19 as it appeared in the Compiled Code and its 1923 Supplement, and considered each section. Many were not

changed in his bill. Some were revised by elimination therefrom, and others by addition thereto. The treatment in detail of each Code section is set out in the brief of the bill in the volume of "Briefs of Code Commission Bills, Iowa 1922" on pages 266–271 thereof.

Section 2524-a1 of the 1923 Supplement to the Compiled Code was:

"Consolidated school corporations. Consolidated school corporations containing an area of not less than sixteen government sections of contiguous territory in one or more counties may be organized for the purpose of maintaining a central school, and existing corporations organized for that purpose may be dissolved in the manner hereinafter provided."

In revising this section the Commissioners' Bill eliminated the last fifteen words thereof, and inserted after the word "organized" the words "as independent districts". In the explanatory notes to this section 2524-a1 in the "Briefs", supra, it is stated that the inserted words were "added for clarity". (Page 268.)

This Commissioners' Bill No. 100, as redrafted and substituted, is set out in full in the volume, "Supplement to the Code Commission's Report, Iowa, 1922, pages 325–347." It was submitted to the Extra Session of the Fortieth General Assembly and introduced as House File 100. In its passage through the assembly (chapter 16) someone noted that while the bill by sections 8 and 9 provided the procedure for the formation of independent school districts in a city, town, or village, and section 16 et seq. provided for the formation of consolidated districts, yet there was no provision for enlarging either class of school districts, after they were established. An amendment relating to such enlargements was then prepared and inserted in the bill as section 11-a1, as follows:

"Separate ballot. Whenever it is proposed to extend the limits of, or add territory to, an existing independent city, town or consolidated district, the voters residing within the proposed extension or addition and outside the existing independent dis-

trict, shall vote separately upon the proposition. The proposition must be approved by a majority of the voters voting thereon in each of such territories."

The meaning of the paragraph is the same as though the word "independent" was inserted before the word "town", and before the words "consolidated district". This is shown by the use of the words "existing independent district" in the line following, which necessarily refer to each district—city, town, consolidated—as an independent district. The section plainly refers and applies to the extension of the limits or the addition of territory to an existing independent school district of a city, an independent school district of a town, or a consolidated independent district.

Instead of placing "section 11-a1" after section 11 in said chapter 16, it might just as properly have been inserted as "section 28-a1" following sections 26, 27 and 28 of chapter 16, Acts of Extra Session, Fortieth General Assembly, or elsewhere therein. It was necessary and proper to insert the section in but one place, and the place chosen was after section 11. But certainly, the legislature in so doing did not intend to limit its applicability to sections 8, 9, 10 and 11 of chapter 16, or to independent city or town school districts, contrary to the express wording of the section that it also included consolidated independent school districts. Chapter 16 of the Fortieth Extra General Assembly contained forty-eight sections, consecutively numbered, entitled "Schools and School Districts" and covering independent districts in cities, towns and consolidated territory. It was offered as a single bill and adopted as a single act. Statutes affecting all of these schools had always been placed in the same chapter in the supplements to the 1897 Code, and in the Compiled Code and its supplements, and any general section therein applied to all schools included.

The following reasoning of defendants is specious and unsound, to wit:

"Furthermore, said section 11-a1 was an amendment to the bill, House File 100 and was inserted when the bill was under consideration in the Senate. * * * The section was therefore de-

liberately placed in the law by the legislature in connection with sections 8, 9, 10 and 11 of said chapter 16, which sections became sections 4141, 4142, 4143, 4144 and 4144.1 of the Code of Iowa, 1939, and sections 274.23 to 274.27 of the Code of 1946. It is significant that the legislature specifically enacted the provision for extending the limits or adding territory to an existing independent city, town or consolidated district in connection with the previous sections dealing with the establishment of independent districts instead of placing the amendment in connection with the establishment of consolidated districts which begins with section 15 of said chapter 16 of the Laws of the 40th Extra General Assembly. * * * It was manifestly intended to apply to such districts [cities and towns]."

We have already answered this contention which ignores the express language of section 11-a1, and its plain purpose. But the answer has additional support, concerning which the defendants do not comment. It is also *significant* that said section 11-a1, before it became section 4144.1 of the 1939 Code and section 274.27 of the 1946 Code, as above noted by defendants, was also section 4191 of the Codes of 1924, 1927, 1931, and 1935. In each of these Codes, section 4191 was one of four sections, only, in chapter 210, which was entitled "Regulations Applicable To All Districts"— not to just independent school districts in cities or towns, but to "All" districts, which necessarily included consolidated independent districts. The first of these four sections was:

"4190. General applicability. The provisions of law relative to common schools shall apply alike to all districts, *except when otherwise clearly stated,* and the powers given to one form of corporation, or to a board in one kind of corporation, shall be exercised by the other in the same manner, *as nearly as practicable.* * * * [C., '97, §2823.]" (Italics are added for later reference and identification.)

While the above-noted section was adopted prior to the adoption of statutes authorizing consolidated independent school districts, it was retained in the revision of the general laws, which culminated in the 1924 Code, and became a part thereof and ap-

plies to all common school districts referred to therein, including consolidated districts.

Section 4191, the second of said sections in chapter 210, was identical with section 11-a1, involved in this appeal. Directly following section 4191 in Codes 1924–1935 is the following reference: "Note: See §§ 4142, 4166, 4167." The first of these sections requires separate ballot boxes in elections for the formation of independent city, town, or village, school districts. But the last two sections refer to the formation of consolidated independent school districts. In making the 1939 Code, the Code editor eliminated chapter 210 and transferred sections 4190, 4191, 4192, and 4193 to chapter 208, and renumbered them, respectively, as 4123.1, 4144.1, 4123.3, and 4123.4. The same "Note", supra, which was placed after section 4191 in the preceding Codes, is placed after the renumbered 4144.1 in the 1939 Code, and after its successor, section 274.27 of the 1946 Code.

The third of the sections in chapter 210 was:

"4192. Action to test legal incorporation—limitation. No action shall be brought questioning the legality of the organization of any school district in this state after the exercise of the franchises and privileges of a district for the term of six months. [39 G. A., ch. 211, §1.]".

The fourth of said sections was:

"4193. When corporation deemed organized. Every school corporation shall, for the purpose of the preceding section, be deemed duly organized and to have commenced the exercise of its franchises and privileges when the president of the board of directors has been elected; and the record book of such corporation duly certified by the acting secretary thereof, showing such election and the time thereof, shall be prima facie evidence of such facts. [39 G. A., ch. 211, §2.]"

The formation of chapter 210 of the 1924 Code, the authorship of its title, and the placing of the four sections therein were not the sole and discretionary acts of a Code editor, in the ordinarily accepted sense, as he compiles the Code every four years. The work of the Code Commissioners selected by the authority of

the General Assembly, in compiling, codifying, revising by elimination and addition, rearranging, retitling, rechaptering, and putting in book form the general laws of Iowa, was a task performed in collaboration with and under the supervision of the Thirty-eighth, Thirty-ninth, and Fortieth General Assemblies, including a long extra session by the last assembly. In addition a committee of five consisting of two members of the Senate and three members of the House were appointed as a Code supervising committee, to have "general supervision and oversight over the work of editing the code and the work of the code editor in preparing the code for publication and of the printing and binding thereof." The Thirty-eighth General Assembly ordered that the supreme court reporter and code editor should be a member of the Code Commission and much of his work was done in that capacity. The placing of section 11-a1 in chapter 210 of the 1924 Code by the authority of the Fortieth Extra General Assembly, which adopted the section, establishes beyond question that it was intended to apply to consolidated independent school districts and to independent city and town districts.

As hereinabove stated, the four sections of general application to all districts in chapter 210 of the Codes of 1924, 1927, 1931, and 1935 were transferred by the Code editor in making the Code of 1939, to chapter 208 of that Code, and now appear in the corresponding chapter 274 in the 1946 Code. Of course, these transfers have not destroyed nor changed the intrinsic general applicability of these sections to all school sections which each of them has always had.

It is true that section 11-a1 of chapter 16, Acts of Extra Session, Fortieth General Assembly, did not specify just the procedure to be used in the enlargement of either a consolidated district or of a city or town independent district, but it was fairly inferable that the same procedure would be used with each kind as the statute required to be used in the initial establishment of the district. That was the method adopted both before and after the enactment of said chapter 16, as the cases cited herein show. The defendants herein assumed such method to be proper since they followed it in their procedure in this case. In Chambers v. Housel, 211 Iowa 314, 316, 233 N.W. 502, 503, the court recog-

nized that section 4191, Code of 1927, did not specify the steps to be taken. That case involved the annexing of a section of land in the Consolidated Independent School District of Anderson to the Consolidated Independent District of Tabor. After quoting the section, the court said:

"It will be observed that consolidated districts are included in the provisions of this section. The right of an existing consolidated school district to extend its boundaries or to add territory thereto is clearly created by this section. No specific method by which this may be done is, however, clearly provided by statute."

In Independent Sch. Dist. v. Consolidated Sch. Dist., 227 Iowa 707–712, 288 N.W. 920, this court queried somewhat about statements in the opinion in Chambers v. Housel, supra, and whether the word "created", in the second sentence of the quotation just above, may have been used advisedly. As we note below, section 11-a1, although it impliedly authorized consolidated districts to enlarge their territory, might fairly be said to have adopted and confirmed prior decisions of this court, sustaining said districts' right to enlarge by following the same procedure required in their formation.

This court in State ex rel. Stinman v. Spellman, supra, 191 Iowa 1181, 183 N.W. 577, and in Arnold v. Consolidated Ind. Sch. Dist., supra, 173 Iowa 199, 155 N.W. 278, and in State ex rel. Kirchgatter v. Thompson, supra, 190 Iowa 1160, 181 N.W. 434, had already held that consolidated independent school districts could be enlarged under the procedure provided by section 2794-a of the 1907, 1913 Supplements and 1915 Supplemental Supplement to the 1897 Code. The enactment of section 11-a1, or section 4191 of the 1924 Code, simply made the law, announced by those decisions, statutory, by impliedly providing that in enlarging a consolidated district the required procedure in the formation of such a district (section 2794-a, 1907 Supplement, as amended) should be followed, and in enlarging an independent city or town district the statutory procedure for its formation (section 2794 of the Code of 1897, as amended) should be followed. In State ex rel. Kirchgatter v. Thompson, supra, 190

762

Iowa 1160, 1166, 181 N. W. 434, 437, the court used the significant language, to wit, "There can be no doubt of the right of a consolidated district to reconsolidate and enlarge its territory, *provided that the proceedings are in accordance with the statute.*" (Italics added.) The particular statute which the court had in mind as shown on the preceding page 1163, was section 2794-a of the Supplemental Supplement of 1915, which stated the procedural steps to be taken in the organization of a consolidated independent district.

In State ex rel. Doherty v. Van Peursem, 202 Iowa 545, 549, 210 N.W. 576, 577, the enlargement attempted was that of the Independent School District of the town of Maurice. The voters outside of the town defeated the attempt, but this court held that the procedure under sections 4141 and 4142 of the Code of 1924, for the initial formation of such a district was proper, saying: "The only question before us is whether section 4191 [section 11-a1, chapter 16, Acts of Extra Session, Fortieth General Assembly] applies to the proceeding authorized by sections 4141 and 4142. We hold that it does. Whether it may have a broader application we do not determine." The last sentence shows that the court rightly determined the only issue submitted to it, and did not attempt to pass upon the question of whether section 4191 was applicable to a consolidated school district.

In Christensen v. Board of Supervisors, 201 Iowa 794, 797, 208 N.W. 291, 293, a mandamus action to compel the division of a township, the rights of school districts were involved. The court said:

"There are various kinds of school corporations in Iowa. They are specifically created and christened by statute. Section 4124, Code of 1924. Other provisions govern the manner of making changes in their boundaries, and the specific method or methods defined are exclusive. *When an independent district is involved, resort must be had to the statute applicable thereto.*" (Italics added.)

It may as truly be said that "when a consolidated independent district is involved, resort must be had to the statute applicable thereto." That was the rule followed by this court in the

cases just cited. The procedure to be adopted was held to depend upon the kind of a district that was being enlarged. In State ex rel. Stinman v. Spellman, Arnold v. Consolidated Ind. Sch. Dist., and in State ex rel. Kirchgatter v. Thompson, all supra, the districts involved and being enlarged were consolidated districts, and in each the statutory procedure for the formation of such districts was held to be proper. While in State ex rel. Doherty v. Van Peursem, supra, the district sought to be enlarged was an independent town school district, and this court held that the procedure required in sections 4141 and 4142 for the formation of such a district was proper.

█ In the case before us the defendants attempted to enlarge an existing consolidated district, as impliedly authorized by section 274.27, Code of 1946, by following the provisions of sections 274.23 and 274.24 of said Code, which apply to independent city, town, and village districts. The plaintiffs contended that under the decisions of this court and under the implied authorization of said section 274.27, the enlargement of the defendant District, which is a consolidated district, should be effected by compliance with the provisions of chapter 276, applicable to consolidated districts, rather than by following the provisions of sections 274.23 and 274.24 of chapter 274, affecting independent districts in cities, towns, and villages. The trial court agreed with plaintiffs and held that the enlargement, which was in reality the establishment of a new district, should have been effected under chapter 276. The question at issue below, and before us for determination, is whether the trial court was right, that is, whether the procedure under chapter 276 rather than under sections 274.23 and 274.24 should have been used.

There has been some discussion by defendants that the enlargement could have been effected by the concurrent action of the respective school boards, under section 274.16. But that question was not in issue and is not before us. It was an issue in a number of cases relied upon by defendants, but they are of no aid in this appeal. Defendants have stated that there are at least three procedural methods by which the desired result could have been accomplished. They may have in mind procedure under section 274.16, or under sections 274.23 and 274.24, or under

chapter 276. But such statements simply confuse the issue. We are concerned only with determining between the last two methods. It is quite impossible to reconcile the inconsistent contentions of defendants. They also state that sections 274.23 and 274.24 "are available to an existing consolidated independent school district to enlarge its boundaries; that reincorporation under chapter 276, Code 1946, is not the exclusive procedure for such action." Yet, to the contrary, the statutory basis for the procedure which they chose is section 274.27, Code of 1946, enacted as section 11-a1 of chapter 16, Acts of Extra Session, Fortieth General Assembly, which they unreservedly assert the legislature deliberately placed "in connection with sections 8, 9, 10 and 11 of the said chapter 16, which sections became sections 4141, 4142, 4143, 4144 and 4144.1 of the Code of Iowa, 1939, and sections 274.23 to 274.27 of the Code of 1946 * * * instead of placing the amendment [section 11-a1] in connection with the establishment of consolidated districts which begins with section 15 of said chapter 16 * * *. It has always been [considered] along with those sections, and never in connection with establishing in the original instance, of a consolidated school district. It was manifestly intended to apply to such districts." That is to city or town independent districts.

If the position of defendants, as above contended by them, is the one to be adopted then section 11-a1 as enacted and in its later forms down to and including section 274.27 never had, and has not now, any application to any section in chapter 276, and is not available or of any force thereunder to effect the enlargement of a consolidated school district. In other words they insist that when the land of a rural owner or occupant by votes of the electors is to be added to a consolidated district, it must be done, not by statutory provisions contained in chapter 276 drawn with particular care in organizing the district and to effect the purposes and meet the conditions and problems of education in consolidated districts and to afford various protections to owners and occupants and others interested, but it must be effected under the provisions of sections 274.23 and 274.24, suited to other conditions. Statutes having to do with consolidated districts from their inception in 1906 have progressed and improved over many

years through the legislative labor of many General Assemblies and the efforts of many workers interested in rural schools, until they comprise the provisions of chapter 276. What are some of these provisions? To form a new district with an area of not less than sixteen government sections, a petition with boundaries of the land described, signed by one third of the voters therein, must be presented to the county superintendent if the land is in one county; if in more than one county, it must be filed with the superintendent of the county in which the greatest number of qualified voters reside; a qualified elector must file an affidavit as to the number of qualified electors in each county. Within ten days after the petition is filed the superintendent must fix a final date for filing written objections by persons residing or owning land within the territory or who would be injuriously injured by the formation of the district; written, ten-day notice of said final date must be published in a newspaper in the territory, if there be one, otherwise in the nearest newspaper. On the said final date interested parties may present evidence and arguments to the superintendent who must rule thereon within five days thereafter and "enter an order fixing the boundaries for the proposed school corporation as will in his judgment be for the best interests of all parties concerned, having due regard for the welfare of adjoining districts; or dismiss the petition;" this order must be published at once in the same newspaper publishing the first notice. Within ten days after the publication of the order, any petitioner, or any person who filed objections, or any person residing upon or owning land included or excluded from the district may serve notice of appeal on the county superintendent. The appeal is heard by the county board of education or by joint meeting of the county boards if more than one county is involved. No interested party may act as appellate judge. The judgment shall fix the boundaries or dismiss the petition.

It is not probable that the various legislatures participating in the enacting of consolidated school legislation intended that it should be by-passed in the manner contended for by defendants, and that owners and occupants of land involved be deprived of these legislative provisions. If these various safeguards are essential in the organization of a consolidated district they are just

as essential in the addition of territory to it. There should be no unnecessary preferment or discrimination with respect to those who came into the district at its organization and those who became members thereafter. The area of the defendant district, if it started with sixteen sections, has quadrupled, if the land involved in this appeal is counted. Those who own or occupy the three fourths of the total area which last came into the district are entitled to all the legislative provisions made available to the original members.

Speaking of the growth and the betterment of statutes governing consolidated districts, the court in State ex rel. Martinson v. Consolidated Ind. Sch. Dist., 190 Iowa 903, 905, 906, 181 N.W. 178, 179, said:

"A district would be created in saw-tooth formation, so that those favoring would be included, and those opposed left out, if necessary to secure the required number of votes for consolidation. The geography of the proposed district could be arranged so as to take part of a farm for taxation, and omit the residence of the owner of said farm. The absence of statutory limitations in these and other matters finally stirred the public mind, by reason of the bitterness and the feeling engendered in many school elections of this character. Recognizing that the basic principle of all social and political action is the greatest good for the greatest number, and to correct certain abuses arising from school district gerrymandering, the Thirty-seventh General Assembly enacted the initial limitation in this particular."

One of the vices of the plan contended for by defendants that any one of three procedures is available in enlarging a consolidated school district is that those who may be opposed to the enlargement have nothing to say about the procedure chosen. Those active in promoting the enlargement, of course, choose the procedure. Naturally they choose the one which will most readily accomplish their object. Written objections, newspaper notices, testimony, arguments, hearings before the county superintendent, appeals to single or joint, and disinterested single or joint county boards of education, acting in the best interests of all concerned and the welfare of school districts whose territory is taken, may

not be conducive to the success of the promoters. The rights of those involved should not be subjected to the caprice and hazards of such loose procedure. This is a government of laws, not of men. In the case before us the petitions, notices, ballots were typewritten by the commercial class of the defendant District. Two hundred fifty signed the petitions on the last two days of February. The school board met the night of the 28th and the election was held on March 17.

I. Defendants have cited no decision that either the procedure contended for by the plaintiffs or the decree of the trial court is wrong, or contrary to any holding of this court or to any statute. In no other case has the issue to be determined been directly presented to or directly passed upon by this court. Defendants rely largely upon the decision in Chambers v. Housel, supra, 211 Iowa 314, 233 N.W. 502. We have already mentioned the nature of the case. The issue involved therein in Division I of the opinion, so far as disclosed, was whether the extension of the consolidated district boundaries should have been by the concurrent action of the two school boards under section 4133 of the 1927 Code, or pursuant to an election under sections 4141 and 4142 of that Code. The question of whether the enlargement should have been under the provisions of chapter 209 of that Code covering consolidated districts was not in issue and was not discussed or passed upon. The trial court held that procedure under section 4133 was exclusive and this court held that the procedure under sections 4141 and 4142 was available. This court commented on the confusion and uncertainty in the school laws of the state. It stated that no single section pointed out a direct and specific course to pursue. It rightly recognized that section 4191 (section 274.27, Code of 1946) applied to consolidated schools, and that it gave no specific method of how a consolidated school district might extend its boundaries. It said that numerous Code sections must be considered and construed together. One of the sections considered was section 4190, hereinabove set out with certain phrases italicized. It was one of those sections in chapter 210 of general applicability to all school districts. It stated that "the provisions of law relative to common schools shall apply to all districts, *except when otherwise*

768

*clearly stated* \* \* \* *and as nearly as practicable."* (Italics added.)
At page 316 of 211 Iowa, page 503 of 233 N.W. The court then
quoted section 4191, another section in chapter 210 of general
applicability. We have already set it out and will not do so
again. · It applied just as definitely and clearly to consolidated
independent schools as it did to independent city and town
schools. Except by proximity of position it had no closer connec-
tion or relation to sections 4141 and 4142 for the original forma-
tion of the school districts referred to therein than it had to cor-
responding sections in chapter 209 for the original formation of
consolidated districts. Section 4191 is not an amendment to or
an aid to any such sections in either chapter 208 or 209, nor does
it clarify them. Those sections then required a separate bal'ot
box for each separate voting territory and a majority vote in
each for the *formation* of the district, whether it was a city or
town independent district or a consolidated independent district,
and section 4191 simply made the same requirements for their
*enlargement.* It contains no express grant of power or authority
to enlarge any school district. It merely says "Whenever it is
proposed to extend etc.," there must be separate ballot boxes and
a majority for the proposition in each separate voting territory.
Section 4191 did not need section 4190 to make it applicable to
consolidated districts. Section 4191 did this expressly by its
own language and required no aid from section 4190. But in
unnecessarily using said section as an aid the court should not
have disregarded the exception therein, to wit, "except when
otherwise clearly stated." The legislature clearly intended that
section 4191 should use the procedure of sections 4141 and 4142
in enlarging independent city and town districts, but just as
clearly and just as logically it intended that the provisions for
the initial forming of consolidated districts should be used in
their enlargement. The fact that there were such provisions in
the chapter on consolidated districts provided the clearly stated
exception in section 4190 which prevented the provisions of sec-
tions 4141 and 4142 from being applicable to the enlargement
of consolidated districts.

The opinion states at page 316 of 211 Iowa, page 503 of 233
N.W.:

"By the enactment of section 4190, the legislature has made all of the provisions of law relative to common schools applicable to consolidated school districts. No exception is recognized. The applicability of the provisions of sections 4141 and 4142 to consolidated school districts is here recognized. This being true, why is not the method for annexing territory prescribed by sections 4141 and 4142 available to a consolidated school district which desires to extend its boundaries? It seems to us that the answer must be that it is. Such is the effect of prior holdings of this court. State ex rel. Doherty v. Van Peursem, 202 Iowa 545; Arnold v. Consolidated Ind. Sch. Dist., 173 Iowa 199; Rural Ind. Sch. Dist. v. Ventura Cons. Ind. Sch. Dist., 185 Iowa 968. * * * The method provided by section 4133 is not, therefore, exclusive."

Under section 4190 the provisions of law relating to common schools apply except when otherwise clearly stated. Even a cursory examination of chapters 208 and 209 of the 1927 Code will disclose that there are many sections in the first that do not apply to the formation of consolidated districts, because such sections with respect to consolidated districts very clearly and definitely state otherwise and to the contrary. There can be no recognition of the applicability of sections 4141 and 4142 to consolidated schools, because they *have* no applicability. To say that "no exception exists" is to overlook that section 4190 expressly states what the exception is. The question is asked "why is not the method for annexing territory prescribed by sections 4141 and 4142 available to a consolidated school district?" One answer is that these sections do not purport to prescribe any method for annexing territory to an existing district. Another answer is that there were and are specific sections in the chapter on consolidated districts prescribing definitely the procedure in establishing a consolidated district, and the reasonable, sensible, and applicable thing to do in enlarging the district would be to use this procedure. None of the three cases cited even tends to support the propositions to which they are cited. State ex rel. Doherty v. Van Peursem, supra, did not involve a consolidated district, but concerned the organization of a new independent district of the town of Maurice with some contiguous outside ter-

ritory. Arnold v. Consolidated Ind. Sch. Dist., supra, not only does not sustain the proposition for which it is cited but holds to the contrary, in that it decided that a consolidated school district organized under section 2794-a of the 1913 Supplement properly effected a reconsolidation under the same statutory provision by annexing additional territory. The third case, Rural Ind. Sch. Dist. v. Ventura Consol. Ind. Sch. Dist., supra, 185 Iowa 968, 171 N. W. 576, in no manner supported or had any applicability to the propositions for which it was cited. There was but one issue in the case and that was whether the consolidated district in taking territory from the plaintiff failed to leave four government sections remaining in it, as required by statute.

The decision in Chambers v. Housel, supra, 211 Iowa 314, 233 N.W. 502, does not rule the case before us for two reasons, first, the issue for decision in this case was not an issue in that case and was not discussed or passed upon; second, the ruling in the first division of the opinion, relied upon by the defendants herein, is unsound. The other cases relied upon by defendants do not establish any error in the decree of the trial court.

In Peterson v. Independent Sch. Dist., 227 Iowa 110, 287 N.W. 275, the issue for determination in this appeal was not involved or passed upon. In that case the controversy was over the validity of the annexing of the Broad Horn Independent School District by the Consolidated School District of Truro, under section 4133, by concurrent action of the two boards. The plaintiff-appellants contended that the annexing was illegal and void because it was not submitted to a vote under section 4191. The trial court held the consolidation under section 4133 was valid.

In Independent Sch. Dist. v. Consolidated Sch. Dist., 227 Iowa 707, 288 N.W. 920, the question here involved was not in issue and was neither discussed nor determined. One of the requisites to the formation of a school district under section 4141 is that there be a written petition of ten voters of a city, town, or village of over one hundred residents, in the proposed district, filed with the board. Since there was no such city, town or village the court held that the requirements of section 4141 were not met.

DeShaw v. South Fork Twp. Sch. Dist., 231 Iowa 27, 300

N.W. 650, involved no consolidated district and the case did not pass upon any question involved herein. The dispute was again between the procedure under section 4133 and section 4144.1. The court held that the change of boundaries under section 4133 was proper.

In Independent Sch. Dist. v. Consolidated Sch. Dist., 232 Iowa 992, 6 N.W. 2d 873, the question of the enlargement of consolidated independent school districts under the provisions of chapter 276 was not presented or ruled upon, and the decision does not rule the determination of this appeal.

Our determination of the issues herein discussed makes it unnecessary to pass upon other matters urged by plaintiffs in support of the decrees of the court.

Both decrees are affirmed.—Affirmed. .

All JUSTICES concur except MANTZ, J., not sitting.