NELS. N. TROE, ·Appellee, v. LARS LARSON *et al.*,
Appellants.

1. **Water Courses**: WRONGFUL CONSTRUCTION OF DAM: EQUITABLE
   RELIEF. An action for a mandatory injunction will lie for the
   removal of a dam previously erected across the outlet of a lake by an
   abutting proprietor, the effect of which is to raise the water of the
   lake above its natural level, and resulting in the continued overflow
   of the lands of other abutting proprietors, although since the con-
   struction of the dam the offending parties have done no act nor
   asserted any right to maintain the same.

2. ———: ———: ———. The extent to which the injury will extend in such case, the period for which the dam may be maintained, and the time when the rights of the injured party can be determined by resort to actions at law, are matters of so much uncertainty and of probable litigation that equity will not deny relief in such cases upon the ground that the injury is not irreparable.

3. ———: ———: ———. The dam in question having been constructed by the defendants upon the land of another with his consent, *held,* that the continuance of the license would be presumed to permit the removal of the dam by the defendants under order of court, it not appearing that said owner had any interest to be subserved by the continuance or abatement of the dam.

*Appeal from Worth District Court.*—HON. JOHN C. SHERWIN, Judge.

TUESDAY, FEBRUARY 9, 1892.

THE plaintiff and the defendants are each owners of land abutting on Silver lake in Worth county. In the fall of 1886 the defendants erected across the outlet of said lake, on the land of Gunder Gulson, a dam of wood and earth, and the petition avers that because thereof the natural flow of the water from the lake has been prevented, resulting in the overflow of the plaintiff's land. An injunction is asked, restraining the defendants from maintaining a dam at a height to raise the water of the lake above its natural level. The answer admits the erection of the dam by the defendants, Loberg and Johnson, and denies it as to defendant Larson. It denies that the dam raises the water above its natural level, and says that the outlet of the lake has in the last twelve years been changed and lowered by digging done therein, so that the water of the lake has been lowered two or three feet below its natural level. The trial in the district court resulted in a decree for the plaintiff, from which the defendants appeal. *Affirmed.*

*Pickering & Hartley* and *Cliggett & Rule,* for appellants.

*L. S. Butler* and *Cummins & Wright,* for appellee.

GRANGER, J. I. The decree of the district court restrained the defendants from maintaining the dam,

1. WATER courses: wrongful construction of dam: equitable relief.

and ordered that they should remove the same within sixty days from the entry of the judgment; and the appellants contend that the court should not have so ordered, because it was a "past and completed act, and not ground for a preventive or mandatory injunction."

We are cited to *Cole v. Duke,* 79 Ind. 107. The case is a good illustration of the general rule contended for, but is not applicable to the facts of this case. In that case the action was to enjoin a city clerk from issuing an order for the payment of an allowance made by the city council, and before process issued the order had issued and been paid, and the court held that the wrong "could not be corrected by an injunction, as its purpose is to prevent, and not to correct, wrongs." A mandatory writ was not sought nor in any way involved in the case. Nor is *Wangelin v. Goe,* 50 Ill. 459, an authority for the appellants' position in this case. Both of the cases recognize the rule that injunction is a preventive remedy, and that is the remedy sought in this case. It is not to correct a wrong of the past, in the sense of redress for the injury already sustained, but to prevent further injury. The injury consists in the overflow of the lands of the plaintiff. It was not alone the building of the dam that caused the injury, but its maintenance or continuance, which is a part of the act complained of; and its maintenance can only be estopped so as to prevent the injury by its removal. The removal of the dam, wrongfully constructed, is necessary for and incidentally involved in the preventive redress which the law authorizes, and no technical application of a rule as to a mere method of procedure should be allowed to defeat so plain a rule of justice.

It is said that the cases in which mandatory injunc-

tions have issued are those of continuing trespasses or nuisances, in which the defendant owned the land on which the nuisance was kept, or was active in continuing a trespass or nuisance on the land of the complainant; and it is sought to distinguish this case, because these defendants have not, since the building of the dam, done any act nor asserted any right to maintain the dam. The dam came into being, and continues to be, because of their act of construction. The injury or trespass results from the wrongful act of construction, and the act continues or is co-existent with the trespass. While the dam continues as the result of their act of construction, they may be said in legal contemplation to be every day maintaining it. We are cited to no authority announcing a contrary rule, and it certainly accords with reason.

II. It is earnestly contended by the appellants that this action cannot be maintained because the trespass complained of is not irreparable in its nature. Just when an injury will be "irreparable" within the meaning of the law, so as to justify a writ of injunction, it is perhaps not the province of a general rule to determine, because of the great variety of facts under which the allegation is made. It may, however, be said not to be so comprehensive in its scope as to embrace all injuries for which there could be a money compensation. The compensation must be adequate, not against the demands of natural justice. The rule is applied to threatened injury to property. High on Injunctions, sec. 702. In the same section it is said: "So, where the trespass complained of is repeated or continued in the nature of a nuisance, or when the wrongful acts continued or threatened to be continued may become the foundation of adverse rights, and may occasion a multiplicity of suits to recover damages, the case presents such equitable features as to entitle complainant to the aid of such injunction." In Gould on Waters, section. 509,

under the subject of "Irreparable Injury," it is said: "The court is not governed by questions of pecuniary value, but will remedy and prevent an injury which it may reasonably be supposed would materially lessen the enjoyment of property by its owner." This case is within the scope of the rules thus announced. To what extent the injury will extend, how long the dam would be maintained, when the rights of the plaintiff could be determined by resorts to actions at law, are matters of so much uncertainty and of probable litigation that equity and justice demand a speedy and conclusive determination of the questions. It may further be said that courts of equity have long taken cognizance of actions for back flowage of water, the obstruction of water-courses and the diversion of streams. Angell on Water-Courses, sec. 445.

III. Gunder Gulson is the owner of the land on which the dam is built, and it is claimed that the defendants would be trespassers in going onto the land to remove the dam. The dam was built with the knowledge of Gulson, as shown by his evidence; and his assent, expressed or implied, may be assumed upon the record before us, not only for its erection but its continuance; and, whatever might be the legal effect of an objection by Gulson to a removal under the order of the court, and how far such an objection would excuse obedience to the order, we need not now consider. We may rather assume that the license before granted will be continued in the fulfillment of a legal obligation by the defendants. We are not informed that Gulson has any interest to be subserved by the continuance or abatement of the dam.

IV. Upon the question of fact whether or not the dam raised the water in the lake above the natural stage there is a large mass of testimony for and against the proposition. No reasonably limited quotation could serve to show the evidence from which the fact is to be found. The lake is meandered, and the title thereof in

the public. That the dam raises the water in the lake above the natural height, or that to which parties have a legal right to maintain it, resulting in a damage to the plaintiff by the overflow of his land, is not to our minds a doubtful question. The difficult question to determine is the height to which the bed of the outlet to the lake may be kept, so as to preserve the rights of parties against too high or too low water. The decree of the district court prohibits the defendants from "erecting and maintaining any dam or obstruction in said outlet." The present dam is made of a log, some twenty-six feet in length and some ten or twelve inches through at one end and eight inches at the other. The testimony is not uniform on this point. Above the log was placed brush, sand or earth, so as to raise the top of the dam somewhat above the top of the log. It is likely the effect of the dam is to raise the water from twelve to sixteen inches above what it would be if the bottom of the log was the height of the bed of the channel. There is some evidence tending to show that the ground where the ends of the log rest is higher than the ground between, and that water would, if not obstructed, run under the log. Considerable uncertainty attends the finding of such facts from the evidence, but our conclusion is, upon the record, that, if the channel of the outlet should be kept at the height of the bottom of the log, it would best protect the rights of all parties. The terms of the present decree would not permit this, but would prevent any dam or obstruction in the outlet. It is possible that the bed of the outlet is not lower than the bottom of the log, and, if not, the removal of the dam would effect the desired purpose. We think the decree should be so modified as to not prevent the bed of the outlet from being kept at the designated height,—that is, the height of the bottom of the log.

V. It is said that the testimony shows that the defendant Lars Larson did not help to erect the dam

or to maintain it, and that the decree as to him is without support. This view of the appellants is correct, and as to the defendant Larson, the bill should be dismissed. There is no other question that we need consider, and the decree of the district court, with the modifications suggested, is AFFIRMED.