UNIVERSAL LOAN CORPORATION, Appellant, v. HARRY JACOBSON et al., Appellees.

No. 40632.

JUNE 20, 1931.

Bradshaw, Schenk & Fowler, for appellant.

Stipp, Perry, Bannister & Starzinger, for appellees.

DE GRAFF, J.—The plaintiff (appellant) Universal Loan Corporation is engaged in the chattel loan business in Des Moines, Iowa, organized under Chapter 419, Code, 1927, and the defendant Publix Finance Corporation is organized and is engaged in a similar business in Des Moines. The defendant Ray D. Newton is the president of the Publix. The defendant Harry Jacobson had been employed by the Universal Loan Corporation as local manager and held such position during the calendar year of 1929. In that year he tendered his resignation effective December 31, 1929, and on said date severed his connection with said company. On January 1, 1930, he entered the employment of the defendant Publix Finance Corporation. Jacobson had been in the retail shoe business in Des Moines for 35 years and subsequently in the chattel loan business as an employee for two years

beginning with the Phoenix Finance Company on January 2, 1928, as an appraiser and outside man and on or about April 15, 1928, entered the service of the Universal Loan Corporation.

This action is in equity and the plaintiff prays a money judgment against the defendants and each of them in the sum of $10,000, and also an injunction to enjoin them and their agents or employees from further circularizing or otherwise soliciting customers of the plaintiff company.

The defendants in answer admit the corporate character of the two loan associations in question, the positions of the named individual defendants, and that on and after January 1, 1930, the Publix Finance Corporation mailed to a large number of people the pleaded circulars, Exhibits A, B, and C, and allege that most of said circulars were mailed or distributed to persons other than customers of the plaintiff, but that some of them may have been mailed to customers of plaintiff. The answer contained a general denial of every allegation in plaintiff's petition not specially admitted, qualified or explained.

This appeal presents two questions which merit consideration and determination. First, was the plaintiff entitled to injunctive relief? Second, was the plaintiff entitled to an award of damages? Of these in their order.

I. It is essential to state the factual side relative to the basis for the injunction prayed. It is undisputed that the defendant Harry Jacobson was in the employ of the Universal Loan Corporation a little over a year prior to January 1, 1930, and prior to that date he voluntarily resigned his position, as was his legal right, and became associated with the Publix Finance Corporation on January 1, 1930. Jacobson was not a stockholder in the Universal Loan Corporation, nor is it shown by competent evidence that he was a director of said corporation. It is the claim of the plaintiff that Jacobson, when he severed his connection with the plaintiff and entered the employment of the defendant Publix Finance, took with him a list of the names of persons who had been or were at said time borrowers of the Universal Loan. Jacobson in his testimony positively denies this accusation and states that when he left the employment of the Universal Loan he did not make any list of the customers, nor did he take with him any such list, nor did he give any such list to any third party, and specifically denies that he gave to the

Publix Finance or any officer or agent thereof, or caused to be given to them, any list of customers of the Universal Loan. The contrary fact is not established. He did state that when he left his former employment he remembered the names of a good many of the customers of the Universal Loan and from his experience knew the difference between its better and its poorer customers. The defendant Newton testified that he and Jacobson made up the list of names which was used for the circularization of printed letters advertising the fact of the business of the Publix and that Harry Jacobson was now connected with said company. It appears from the testimony that the individual names which composed the list were secured from the City Directory, the Telephone Directory, Des Moines Daily Record, Credit Reference Book, list of motor accounts, and from other sources at their command. It may be observed that the matter of which the plaintiff Universal Loan complains ended in January 1930. The petition in this case was filed February 4, 1930. When the petition was filed the act complained of (the circularization) had ceased. It is quite fundamental that rights already lost and wrongs already committed are not subject to injunctive relief. This is especially true where there is no showing that the acts complained of in the first instance are being continued or repeated or that the defendant is threatening or intending to repeat the alleged injury. When it is made to appear that the acts sought to be enjoined had been performed at the time the action for injunction was commenced, the petition is properly dismissible. Wilbois v. Town of Runnells, 193 Iowa 789. An injunction is not corrective of past injuries. High on Injunctions (4th Ed.) Vol. 1, Sec. 23, states the rule as follows:

"The appropriate function of the writ of injunction is to afford preventive relief only, and not to correct injuries which have already been committed, or to restore parties to rights of which they have already been deprived. It is not, therefore, an appropriate remedy to procure relief for past injuries, and it is only to be used for the prevention of a future injury actually threatened, and to prevent the perpetration of a legal wrong for which no adequate remedy can be had in damages. And if the act sought to be enjoined has already been committed, equity will

not interfere, since the granting of an injunction under such circumstances would be a useless act.''

See also 32 C. J. pp. 45, 46. It is sufficient to state that the petition in the case at bar is within the purview of the rule announced herein.

II. Under the record facts, is plaintiff entitled to an award of damages? To entitle the plaintiff to damages it must be pleaded and proved (a) the existence of a primary right in the plaintiff; (b) the violation of that right by defendants, namely, a primary wrong; (c) that the primary wrong by defendants or some of them was the proximate cause of injury to plaintiff; (d) the damages which plaintiff has thereby sustained.

We first inquire, Was there a primary right existing in plaintiff which has been violated by the defendants or either of them? If this question is answered in the negative, then no damages are recoverable. We revert again to the factual side. What did the defendants do in the fore part of January 1930 upon which the plaintiff predicates his right to an award of damages? It must be borne in mind that this case does not involve trade secrets, confidential information or secret formulae. There was no contract either written or oral that prevented Jacobson from entering the employment of a competitor of the plaintiff. No written or printed list of the plaintiff's customers was copied and no information confidentially acquired as to the details of the plaintiff's business was used by the defendants or either of them. There was no breach of trust disclosed by the evidence. There was no unfair competition shown. There was no malicious act or fraudulent purpose or conspiracy involved here. The simple question is whether a legal wrong was committed, and did the alleged damages proximately result therefrom? Apparently some of the customers of the Universal Loan borrowed money from the Publix and with the money so borrowed paid the debt owing to the Universal Loan. That was a matter personal to the borrower. In this connection we may inquire what number, if any, of these ''customers'' who received circulars respecting the employment of Jacobson by the Publix Finance acted thereon. What number of the Universal Loan's ''customers'' were induced to borrow money from the Publix by reason of its paid advertisement in the Des Moines newspapers? What number of

the Universal Loan's "customers" in January 1930 made loans from the Publix for a reason other than that they knew and liked Jacobson? What number of the names of the Universal Loan "customers" were obtained from the chattel loan mortgage record in Polk County? To these questions the abstract of record affords no answer.

In the recent decision of Padover v. Axelson, 167 N. E. 301 (Mass.) (June 28, 1929), the Supreme Judicial Court of Massachusetts recognized the correct rule in a suit in equity brought to restrain the defendants from disclosing information concerning the plaintiff's business and from soliciting customers of the plaintiff who were such customers on the defendant's routes when the employment of the individual defendants by the plaintiff terminated and to restrain the defendant corporation from employing the individual defendants. It is there said:

"As we construe the findings of the trial judge, no written list of plaintiff's customers was given to the individual defendants. * * * There was no written contract preventing Axelson (and other defendants) * * * from entering the employment of a competitor of the plaintiff, and there was no finding of any oral contract of this kind. No written or printed list of the plaintiff's customers was copied, and no information confidentially acquired as to the details of the plaintiff's business was used by them. These appellants solicited the former customers of the plaintiff, but there was no breach of any duty owed the plaintiff in this. They could use their knowledge of the trade. Their acquaintance with the customers, their skill and intelligence as salesmen, were not surrendered to the plaintiff. 'The employee may achieve superiority in his particular department by every lawful means at hand, and then, upon the rightful termination of his contract for service, use that superiority for the benefit of rivals in trade of his former employer. As was said in Herbert Morris, Ltd. v. Saxelby [1916] 1 A. C. (House of Lords) 688, at 714: "A man's aptitudes, his skill, his dexterity, his manual or mental ability * * * ought not to be relinquished by the servant; they are not his master's property; they are his own property; they are himself. There is no public interest which compels the rendering of those things dormant, or sterile or unavailing; on the contrary, the right to use and expand his powers is advantageous

to every citizen, and may be highly so for the country at large." ' "

The trial court in the Padover case, supra, entered a decree as prayed, but the Supreme Court reversed and a decree was ordered entered for the defendants dismissing the bill with costs. See Gossard Co. v. Crosby, 132 Iowa 155; Lewitter v. Adler, 137 Atl. 541 (N. J. Eq.); but see, Golden Cruller & Doughnut Co. v. Mansher, 123 Atl. 150 (N. J. Eq.).

In the instant case there is no competent evidence showing or tending to show that the defendants or either of them had violated any legal rights of the plaintiff's. There is no evidence that the Universal Loan "customers," to whom some of the circulars were mailed or a post card was directed, were motivated by such information to borrow money from the Publix to pay loans borrowed and then owing to the Universal Loan. For aught that appears, these loans were made from the Publix by some of the former customers of the Universal Loan by reason of their personal acquaintanceship and confidence in the defendant Jacobson. The fact that such a change of creditor was made did not constitute a legal wrong under the circumstances presented here. Furthermore, the evidence fails to disclose that the change of relationship by the debtors proximately resulted from any wrongful act of the defendants'. The claimed damage is speculative and a mere conjecture under the evidence offered and under proper objections by the defendants. The issues arise under the pleadings and the decision must be responsive to the issues joined. There is not involved here a willful or malicious interference by a third party causing a breach of contract, nor is it true that the act of a third party caused the performance of a contract. The record fails to show that the defendants were *culpa* or in what instances or in what amounts were debts paid by the borrower from the plaintiff corporation by reason of any act claimed to be *culpa* on the part of defendants or any of them.

We conclude, therefore, that plaintiff's petition is without equity and the trial court properly dismissed same upon the merits.—Affirmed.

FAVILLE, C. J., and STEVENS, ALBERT, and WAGNER, JJ., concur.