CLIFF ALLELY et al., appellants, v. BOARD OF EDUCATION in and
for MILLS COUNTY, defendant-appellee; MALVERN COM-
MUNITY SCHOOL DISTRICT, MARION WILSON and
FRED W. PIERCE, intervenors-appellees.

No. 50354.

(Reported in 110 N.W.2d 410)

AUGUST 15, 1961.

Hogzett & Burgett, of Oakland, and Smith, Peterson, Beckman & Willson, of Council Bluffs, for plaintiffs-appellants.

Glen M. McGee, County Attorney, of Glenwood, for defendant-appellee.

Cook & Drake, of Glenwood, for intervenor-appellee Malvern Community School District.

LARSON, J.—Plaintiffs, as residents in remnant school districts, each of which contained less than four government sections of land, brought this suit in equity to enjoin the Board of Education in and for Mills County, Iowa, from attaching said remnant districts to the reorganized Malvern Community School District.

Pursuant to trial to the court on pleadings and a stipulation of facts, a permanent injunction was denied, the temporary injunction dissolved, and the cause dismissed. Plaintiffs appeal.

As stated by appellants and adopted by appellees, "the issues on appeal are whether the County Board of Education [under the circumstances] had authority to attach remnant school districts to a [reorganized] school district from which the County Board had previously granted a petition taking said remnant school districts out of said district." Actually appellants contend (1) that the county board acted in excess of its authority in fixing the boundaries of the proposed Nishna Valley Community School District so as to exclude territory already excluded from the Malvern Community School District, and (2) that it acted in excess of its authority in attaching by resolution those remnant districts to the Malvern district.

The stipulated facts and exhibits introduced at a pretrial conference reveal that, pursuant to a hearing on objections to the proposed reorganization of the Malvern Community School District, hereinafter referred to as the Malvern district, the Mills County Board of Education, at the request of the plaintiffs, amended the proposal and fixed the final boundary lines of that district so as to exclude plaintiffs' land. This change resulted in three remnant districts containing less than four government sections of land—Benton, Golden Hill and Wearin. The remainder of the Valley View district, however, contained more than four government sections. The proposal as amended carried and the new district became effective July 1, 1960. Section 275.24, Code, 1958.

Shortly after the land in controversy was excluded from the Malvern proposal, a Nishna Valley Community School District reorganization proposal was considered by the Mills County Board of Education. The territory involved therein lies east of the Malvern district, and the new proposal included all the lands of plaintiffs previously excluded from the Malvern reorganization. No objections to this proposal were made by plaintiffs, but pursuant to a hearing on the proposal the county board on its own motion amended the proposal and fixed the final boundary lines of the Nishna Valley district so as to exclude

plaintiffs' lands. No appeal was taken from that action and the amended Nishna Valley proposal carried and also became effective July 1, 1960. Four remnant districts, North and South Benton, Golden Hill, Wearin, and Valley View, containing less than four government sections of land, then remained unattached.

North Benton is contiguous to the Malvern, Nishna Valley, and Box Elder districts. South Benton is contiguous to Malvern only, unless through the remnant of 40 acres in Valley View it is made contiguous to the Nishna Valley district. Valley View, Golden Hill and Wearin are all contiguous to the Malvern and Nishna Valley districts. From Exhibit "1" it appears all the tracts involved are nearly surrounded by the Malvern district.

Pursuant to the approval of the Nishna Valley reorganization by the electorate, the Mills County Board purported by resolution to attach the remnants of North and South Benton, Golden Hill, Wearin, and Valley View to the Malvern district, effective as of July 1, 1960, under the provisions of section 275.5, Code, 1958. When plaintiffs' objections to that action were overruled, they brought suit to enjoin the board from proceeding with the attachment of the North and South Benton, Golden Hill and Wearin remnants, and a temporary injunction was issued. Sometime after July 1, 1960, it was discovered that the Valley View remnant had been overlooked and plaintiffs' petition was amended to include it.

The learned trial court found the Mills County Board, acting as a legislative tribunal, properly attached the four remnant districts of less than four government sections of land to a contiguous district under the provisions of section 275.5, Code of Iowa, 1958, and that it did not act illegally, although due to an impasse it did attach the remnants to a district from which they had previously been removed and not to "another school district" as required in said section. It also found that while the Malvern proposal as amended did leave out the 40 acres of Valley View involved herein, it did not reduce the Valley View district to less than four government sections, that such condition came about after the final boundaries of the Nishna Valley

district were established, and that therefore the Malvern district was the only remaining or other contiguous district and that the county board was required to attach it to the Malvern district. It further found South Benton was then contiguous to only the Malvern district and had to be attached to it, that as to the Wearin and Golden Hill territory an impasse appeared which, under our decision in the Monroe Community School District v. Marion County Board of Education, 251 Iowa 992, 103 N.W.2d 746, required the county board to decide how the territory in the remnants should be attached to remaining contiguous districts. Having exercised that legislative function and there being no allegation or proof of bad faith in so doing, the trial court dismissed the petition. We agree with these conclusions.

■ I. The general rule is well settled that the creation, enlargement, or diminution of political districts, municipal corporations, or school districts, is a legislative function, and the court's power to interfere with the exercise of discretion by a board acting under statutory authority is limited to questions as to abuse of that discretion or as to whether the conditions precedent as declared by the statute have been complied with. In re Proposed Community School District of Malvern, 250 Iowa 1240, 98 N.W.2d 737, and citations. That rule applies here.

■ We have also adopted a rule of liberal statutory construction in school matters, a construction which will best effect the legislative purpose of accomplishing desirable, reasonable and prompt school reorganization in the state. We discussed this rule and statutes applicable to school reorganizations recently in the cases of Hubka v. County Board of Education, 251 Iowa 659, 663, 102 N.W.2d 167, Monroe Community School Dist. v. Marion County Board of Education, 251 Iowa 992, 997, 998, 103 N.W.2d 746, 749, and In re Proposed Community School District of Malvern, supra, 250 Iowa 1240, 1244, 98 N.W.2d 737, and citations.

■ Plaintiffs contend that defendant Mills County Board of Education somehow acted illegally in removing the involved areas from the Nishna Valley proposal, but it does not appear how the board's act of fixing the final boundaries of that proposed reorganization was unauthorized, or how in so doing it

abused its legislative discretion. The board's discretion in such matters under chapter 275, Code of 1958, is broad and complete. Its legislative power to hold hearings and render decisions fixing boundaries is set out in section 275.15 of the Code. Unless it clearly appears that its legislative power to fix boundaries is somehow restricted by some specific statutory provision, that authority has always been held complete and absolute. We reviewed that authority in the case of Hubka v. County Board of Education, supra, and at page 663 of 251 Iowa, page 169 of 102 N.W.2d, said: "It thus quite clearly appears that the joint boards acting as a single board have authority to amend tentative county plans." We are referred to no restrictions of the county board's authority when in good faith it amends the boundaries of a proposed reorganization, including a tentative county plan, which results in remnant districts of less than four government sections, and we have found none. Section 275.15 provides for a hearing on objections to a reorganization proposal, and that within five days after the hearing the county board "shall enter an order fixing such boundaries for the proposed school corporation as will in its judgment be for the best interests of all parties concerned, having due regard for the welfare of adjoining districts * * *." The section provides for an appeal to the courts by any school district aggrieved. The conclusion is inescapable that a county board has the authority to amend the boundaries of any reorganization proposal submitted to it before the proposal is placed before the electorate. It performed that duty here.

II. Plaintiffs, however, contend that the county board's authority is specifically restricted by the provisions of section 275.5, Code, 1958, as amended by chapter 190, Acts of the Fifty-eighth General Assembly. This section provides that pending completion of final county plans for reorganization of school districts, the county board shall prepare and approve tentative plans within their county, and that "Any proposal for merger, consolidation or boundary change shall first be submitted to the county board of education * * *." When any such proposal is submitted, the county board is required to adopt and file a tentative county plan with the state department of public in-

struction within 60 days. The section then provides, "Such proposals may provide for reducing an existing school district to less than four government sections and *where such proposal is put into effect by election* by the method hereinafter provided, *the county board shall by resolution* attach or subdivide and attach the remaining portion or portions of said district to *another* school district or districts." (Emphasis supplied.)

Under the liberal construction given statutes granting legislative authority to county boards we cannot find in that section any restriction on the county board's authority to amend boundary proposals, but we do find an extension thereof to permit such amendment even though it results in the reduction of an existing school district to less than four government sections. The section is consistent in placing the power of approval of such a proposed reduction in the county board when in its judgment it will be for the best interest of those concerned.

There is no merit to the contention that the word "proposal" in this section refers only to the tentative proposal or to the proposal contained in the original petition. To so hold would take from the county board all right to consider and amend a proposal which provided for reducing an existing district to less than four government sections. We do not attach such meaning to that term, but hold it refers to the "proposal" finally approved and submitted to the electorate. In this regard it is interesting to note that unless the power and authority exist in the county board to amend a proposal so as to provide for reducing an existing district to less than four government sections, plaintiffs' land could not have been removed from the Malvern proposal originally. Needless to say, no such contention was made herein.

We are satisfied the county board did not act in excess of its statutory authority in fixing the boundaries in either the Malvern or the Nishna Valley proposals approved by the electorate, but duly exercised its legislative discretion as intended under chapter 275 of the 1958 Code.

III. Plaintiffs' principal contention is that the county board exceeded its authority in attaching the involved areas to the Malvern district by resolution, and that the residents should

have been allowed to vote on the question as to which reorganized district they wished to be attached. We cannot agree.

It is true we held the last sentence in section 275.5 amounted to a restriction on the county board's discretion in the case of Robrock v. County Board of Education, 250 Iowa 422, 94 N.W.2d 101. The decision under those facts was correct, for there the county board, after deleting an area, ignored the existence of another contiguous school district to which the area could be attached by resolution and attempted to attach it to the one from which it had been eliminated. The action clearly violated the statutory directive, which we said in such circumstances was mandatory.

However, we refused to extend that holding to a different situation in the more recent case of Monroe Community School Dist. v. Marion County Board of Education, 251 Iowa 992, 103 N.W.2d 746. There, as here, only two contiguous districts remained after the proposed reorganizations were approved by the electorate. There the remnant remaining of less than four government sections had been duly excluded from both original proposals, and was then by resolution of the Marion County Board attached to the Pella district. We held it a proper exercise of the county board's legislative authority. At page 998 of 251 Iowa, page 749 of 103 N.W.2d, we said: "A solution [in such circumstances of impasse] lies only in the liberal construction of the statutes as amended with a view to giving effect to the legislative intent as expressed therein." Thus where such an impasse occurs due to the lawful exercise of authority to establish boundaries of a proposed district reorganization, we held the legislature intended the county board concerned was the proper body to exercise legislative discretion and decide to which contiguous district all or portions of the remnants should be attached.

Plaintiffs attempt to distinguish the Pella case on the ground that the final boundaries there were established by the state department of public instruction, not by the county board. After an appeal from the joint county board action, which did include the remnant from the first reorganization within the second, the state department did exclude it, but we find no legal

distinction involved. In each case, as we have pointed out, the body fixing the boundaries was acting within its authority. The instant case is controlled by that decision. Then, too, it would seem in such cases that since discretion to fix the final boundary lines of each proposed district in the absence of an appeal was left in the county board, such double exclusions amounted to no more than a reservation of a final decision as to where the division line between the reorganized districts should be established. Such is not an unreasonable extension of authority as it must of necessity involve only a small territory and a comparatively few residences. If the legislature wishes to allow such an attachment without a vote of the people, it may of course so provide. We think it did so, but, if that is too great a delegation of authority to the county board, recourse must be to the legislature. We find no provision for a vote of the residents in such remnants as to which contiguous district they desire to join, and none has been called to our attention. It is clear the legislature believes the county board was best able to decide this question, and having apparently done so here in good faith, that decision should be upheld by the courts.

IV. There was no direct claim of bad faith on the part of the county board, but plaintiffs do argue that if the board is permitted to delete from the only other contiguous reorganization proposal remnants removed from a prior proposal, after a request by the residents thereof, it could engage in subterfuge to avoid opposition to a contemplated reorganization. It is true in the Robrock case we made that suggestion as an added reason why the county board was intentionally prohibited from placing the remnant district back into the one from which it was deleted prior to the election. In the circumstance of the Robrock case such implication would be much greater than in the matter before us. As pointed out previously, the action taken by the county board here merely deferred the date of final determination as to where the area or parts of the deleted area should be attached, and on occasions it may well be a wise deferment. In both deletions the power to attach without an expression of the voters is clearly placed in the county board. It must be presumed in such cases that the county board will carry out

the legislative mandate and will attach the areas involved as in their best judgment will be best for all concerned and the over-all reorganization requirement. We have often recognized that such boards are made up of persons of integrity and high purpose, that they strive to perform their duties in good faith and do so. State ex rel. Harberts v. Klemme Community Sch. Dist., 247 Iowa 48, 53, 72 N.W.2d 512, 515, and citations; Everding v. Board of Education, 247 Iowa 743, 754, 76 N.W.2d 205.

V. There are other minor issues raised, but due to our conclusions already reached they need no extensive consideration. Defendant contends, with considerable merit, that both the South Benton and the Valley View remnants could only be attached to Malvern in any event. It points out under the resolution of the board the Valley View remnant was attached to Malvern on July 1, 1960, which was sometime prior to plaintiffs' amendment to its petition for injunction to include the 40 acres in Valley View, and that injunction will not lie where the act complained of has already been done, and that the trial court's ruling to that effect has not been challenged. As bearing on this proposition see Universal Loan Corp. v. Jacobson, 212 Iowa 1088, 237 N.W. 436; Hufford v. Herrold, 189 Iowa 853, 179 N.W. 53.

Defendant also points out that South Benton could only be attached to Malvern without Valley View as at no other point is it contiguous to the Nishna Valley district. North Benton, in which no plaintiff resides, could have been attached to the Box Elder district, but as Box Elder has now voted to merge with the Malvern district, that issue seems moot.

VI. We have carefully reviewed the stipulation and the exhibits submitted and we find nothing to indicate any abuse of discretion or bad faith on the part of the Mills County Board, and with the exception of the evidence that most of the children of the residents of the territory involved have been sent to the Emerson school now located in the Nishna Valley district, all circumstances seem to indicate a sound and proper judgment in attaching the area involved to the Malvern district: Obviously the Wearin and Golden Hill remnants are nearly surrounded by the established Malvern district and,

1152

barring exceptional conditions, would seem best attached to that district. All these factors, including the wishes of the residents should be, and we think they were, adequately considered by the Mills County Board, and without evidence of abuse or bad faith the board's decision in such matters cannot be disturbed by the courts. The judgment of the trial court is affirmed.— Affirmed.

All JUSTICES concur except PETERSON, J., who takes no part.