EVAN DAVIES, appellant, DONALD MASTERS et al., intervenors-appellants, v. MONONA COUNTY BOARD OF EDUCATION et al., appellees.

No. 51701.

(Reported in 135 N.W.2d 663)

986

John D. Beardsley, of Onawa, for appellant.

Crary & Huff, of Sioux City, for intervenors-appellants.

Prichard & Prichard, of Onawa, for appellees.

THOMPSON, J.—On February 2, 1964, a written agreement was signed by the Castana Community School District, hereinafter known as Castana, by which it made over to the West Monona Community School District, hereinafter known as Monona, 12.4 sections of land which up to that time had been a part of Castana. The two districts adjoin at the west line of Castana and the east line of Monona; and the land involved is a part of that immediately adjacent. Monona signed the agreement on April 17, 1964. This agreement is attacked by the plaintiff and the intervenors in this action, which was brought in equity, asking that it be declared void and that an injunction issue restraining the defendants from putting it into effect.

The agreement was approved by the Joint Boards of Education of Monona and Harrison Counties on May 12, 1964. It was made under the provisions of Code section 274.37, Code, 1962, and amended by chapter 10, Acts of Sixtieth Extra General Assembly, which we quote:

"The boundary lines of contiguous school corporations may

be changed by the concurrent action of the respective boards of directors at their regular meetings in July, or at special meetings called for the purpose. Such concurrent action shall be subject to the approval of the county board or boards of education involved but such concurrent action shall stand approved if the county board or boards of education do not disapprove such concurrent action within thirty days following receipt of notice thereof. The corporation from which territory is detached shall, after the change, contain not less than four government sections of land.

"The boards in the respective districts, the boundaries of which have been changed under this section, complete in all respects, except for the passage of time prior to the effective date of the change and when all right of appeal of the change has expired, may enter into joint contracts for the construction of buildings for the benefit of the corporations whose boundaries have been changed, using funds accumulated under section 278.1, subsection seven (7), of the Code. The district in which the building is to be located may use any funds authorized in accordance with chapter 75 of the Code. Nothing in this section shall be construed to permit the changed districts to expend any funds jointly which they are not entitled to expend acting individually."

We shall for brevity refer hereinafter to the appealing plaintiff and intervenors as the plaintiff. The propositions relied upon for reversal may be summarized thus: first, it is said there was another and prior proposal for reorganization pending, which deprived the districts of jurisdiction to make the agreed boundary change; second, that chapter 275 of the Code provides the exclusive means of making boundary changes such as the one proposed here; third, that section 274.37 is unconstitutional because it makes an illegal delegation of legislative power in violation of Article III, section 1, of the Iowa Constitution; fourth, that a boundary change resulting in an increased tax burden on a property owner in a school district affected violates due process clauses of the Federal and State Constitutions; and fifth, that even if section 274.37 is constitutional the action

of the boards was arbitrary, discriminatory and an abuse of discretion.

I. We consider first the claim that a prior and pending plan of reorganization prevented the Castana and Monona boards from having jurisdiction to take any action affecting the land involved in the boundary change. On November 15, 1963, a petition had been filed with the Monona County superintendent of schools providing for a merger of the two districts into one. This petition had been approved by the boards of directors of both districts. It was, however, disapproved by the Monona County Board of Education on December 16, 1963. Castana appealed to the state department of public instruction, which dismissed the appeal and upheld the decision of the Monona County Board of Education. No appeal was taken to the district court.

It was in this situation that the agreement under attack here was made by Castana and Monona. But on March 30, 1964, a petition in certiorari was filed in the Monona district court by Evan Davies, the named plaintiff in this appeal, alleging that the decision of Monona County Board of Education was illegal and erroneous and that he, as a resident and taxpayer of the Castana district and a signer of the petition for merger, had a right to bring the action to protect his interests. At least at the time of trial below no writ had issued and no further action had been taken.

It is on the basis of this pending certiorari action that the plaintiff asserts the Castana and Monona boards had no jurisdiction to make the boundary line change they did. He relies upon the rule laid down in State ex rel. Harberts v. Klemme Community School District, 247 Iowa 48, 72 N.W.2d 512, and in other cases. The argument is that the reorganization proposed by the merger petition and approved by the boards was still pending when the boundary change agreement was executed by Castana and Monona in 1964. It is thought that the certiorari action kept the first proceeding alive. The rule is that "subsequent-acting school authorities can acquire no jurisdiction of an area included in a prior-pending reorganization." This quotation is from the Klemme case, loc. cit. 247 Iowa 53, 72 N.W.2d

515. Undoubtedly the principle is sound, and we have no intention of departing from it. But it has no application here.

We do not have a case of two contesting districts attempting to gain control over the same territory. At all times Castana and Monona have been in agreement. Both boards approved the merger petition, and adhered to it until it had been disapproved by the Monona County board and that action affirmed by the state department of public instruction. Neither saw fit to take an appeal to the courts; in effect, they acquiesced in the disapproval of the merger petition. They then took a different route, and agreed upon a change in the boundary lines of the districts by which some 12.4 sections of the westerly part of Castana were transferred to Monona. At no time has there been any dispute between the two districts as to the action to be taken or the territory involved.

In Klemme we find significant language quoted with approval from Independent District of Sheldon v. Board of Supervisors, 51 Iowa 658, 660, 2 N.W. 590, 591: "By the proceedings taken by the plaintiff it had obtained jurisdiction over the disputed territory before any steps were taken to organize Grant. The right to complete its organization, as provided by law, followed. It could not be ousted of its jurisdiction over the disputed territory by anything done subsequent to the commencement of the proceedings to organize the plaintiff, unless the attempted organization was abandoned, or was not completed within the time required by law." Loc. cit. 247 Iowa 52, 72 N.W.2d 515.

This established a qualifying rule, that if an attempted reorganization is abandoned a new proceeding may be commenced, and is not invalid for want of jurisdiction. The two school boards here had clearly abandoned their first attempt by failure to appeal the decision of the county board and its approval by the state department, and by proceeding with a different plan. There is no conflict between the boards, no conflicting claims to the territory involved. The only claim of any breath of life left in the first reorganization plan is the certiorari action brought by the plaintiff. It is not sufficient to require the application of the Klemme rule. The boards have abandoned the first plan and it is no longer pending, nor would it be even

if the court should eventually decide the Monona County board was without jurisdiction or acted illegally in disapproving it. It must be noted that the state department of public instruction is not a party to the certiorari proceeding, and its disapproving decision would not be affected by any ruling in that case. Nor are we cited to any authority which prevents the board of the high school district involved—in this case Monona—from changing its acceptance of the school district not operating a high school—Castana—at anytime before the merger is approved by the county board. This it has in effect done by the agreement for a boundary change, which of necessity replaces the merger plan.

II. The plaintiff urges that chapter 275 provides the only method of making boundary changes such as the one under consideration here, and that section 274.37, supra, was not available to the two districts. Chapter 275 does in fact provide a method of changing the boundaries of two or more districts located contiguously. Code sections 275.9 to 275.24 inclusive. It is a different procedure from the simple process of joint agreement of the boards involved set forth in 274.37. The plaintiff relies here upon Cook v. Consolidated School District, 240 Iowa 744, 38 N.W.2d 265, and Swan Lake Consolidated School District v. Consolidated School District of Dolliver, 244 Iowa 1269, 58 N.W.2d 349. The Swan Lake case did no more than to follow the precedent set in Cook; it is to the latter case we must turn for our examination to determine whether it is controlling.

It was held in Cook that the then chapter 276 of the Code provided an exclusive method of reorganization of consolidated school districts, and that chapter 274 under which the defendants had proceeded was not available to them. Chapter 276 has since been repealed by the Fifty-fifth General Assembly. There is no longer any emphasis placed on the former designations of consolidated districts or independent districts. Our school laws apply generally to all districts. Sections 274.2 and 275.1.

But the plaintiff says that the principle announced in Cook and Swan Lake is applicable to the situation here. He points out that section 275.9 says:

"When any school district is enlarged, reorganized, or

changes its boundaries pursuant to the plans hereinabove provided for, such enlargement, reorganization, or boundary change shall be accomplished by the method hereinafter provided.

"The provisions of sections 275.1 to 275.5, inclusive relating to studies, surveys, hearings, and adoption of county plans shall constitute a mandatory prerequisite to the effectuation of any proposal for district boundary change. It shall be the mandatory duty of the county board or joint county boards to dismiss the petition if the above provisions are not complied with fully."

Also he relies upon section 274.2 which so far as pertinent is this: "The provisions of law relative to common schools shall apply alike to all districts, except when otherwise clearly stated * * *." From these sections he reasons that it is "clearly stated" in section 275.9 that the method of changing the boundaries of a school district there provided is exclusive.

We do not so read the statutes or agree with the plaintiff's reasoning. Section 275.9 says that change of boundaries "pursuant to the plans hereinabove provided for [as set forth in preceding sections of chapter 275] shall be accomplished by the method hereinafter provided." The second paragraph of the section makes the compliance with these preceding sections mandatory prior to the effectuation of any boundary change. But we think these restrictions apply only when the procedure is under chapter 275. It is only when the change of boundaries is "pursuant to the plans hereinabove provided" that the method is mandatory. We do not find it so "clearly stated" that the method set forth in chapter 275 is exclusive that we can ignore section 274.37.

At this point we think the time of the enactment of section 274.37 becomes of the greatest importance. Section 274.16, Code of 1946, which was in effect identical with the present section 274.37, was repealed by the Fifty-fifth General Assembly in 1953. There was then no such law in Iowa until the enactment of the present section 274.37 by the Fifty-ninth General Assembly, which became effective on May 4, 1961.

At that time the present law relating to the change of boundaries of contiguous school districts as it now appears in chapter 275 was in effect. It seems inescapable that the legis-

lature, knowing of the existence of chapter 275 in our law, must have intended to provide an alternative and simpler method for boundary changes. It must also be held to have known of the Cook and Swan Lake cases and their holdings. Unless we are to say that the legislature knowingly and advisedly did an entirely futile thing in enacting chapter 156, section 1(1), Acts of the Fifty-ninth General Assembly, now section 274.37 of the Code, we must hold that it intended to do just what the section says it does: that is, to make an alternative method of changing boundaries. This concept in itself distinguished the holding in Cook and Swan Lake. See also Bohrofen v. Dallas Center Independent School District, 242 Iowa 1070, 49 N.W.2d 514. It is our conclusion that section 274.37 provides an alternate and available method of changing boundaries under the circumstances shown here.

III. Next we reach the contention that if section 274.37 is interpreted to give the boards of the contiguous districts a means of changing boundaries, it is unconstitutional. Two reasons are advanced. The first is that the statute gives no standards to guide the administrative bodies in their actions. Lewis Consolidated School District v. Johnston, 256 Iowa 236, 127 N.W.2d 118, and Wall v. County Board of Education, 249 Iowa 209, 86 N.W.2d 231, with cases cited in each, are relied upon by the plaintiff at this point.

The first standard set up in section 274.37 is that the corporation from which territory is detached shall, after the change, contain not less than four sections of government land. Castana contained 76 and a fraction sections; so that, after detaching the 12.4 sections as provided by the joint agreement of the boards, there remained approximately 64 sections. The guideline of the statute is thus complied with. It might well be held that this standard is all that is required, if standards are essential. It defines how much land may be taken.

We have said that the fixing of boundaries by school corporations is a legislative function. Green v. Webster County Board of Education, 253 Iowa 1198, 1200, 115 N.W.2d 856, 857; Grant v. Norris, 249 Iowa 236, 254, 85 N.W.2d 261, 271, and citations. We have held in these and other cases that the courts

might not interfere with the legislative determination of the boards, absent a showing of arbitrariness or abuse of discretion.

▉▉ Chapter 274 in sections other than the disputed 274.37 contains many expressions of the general policy of the legislature in regard to the organization and reorganization of school districts. All these must be read together. When this is done, the situation here conforms to our expression in Wall v. County Board of Education, supra: "Procedure of the board and superintendent must be in accordance with general policies prescribed in the chapter. Rules, regulations and resolutions, or action by duly adopted motions, are permitted as long as they do not violate legislative provisions." Loc. cit. 249 Iowa 228, 86 N.W.2d 242. The general policy of the school laws is made clear; and this must be followed. The district from which the land is to be taken may not be reduced to less than four sections; and the general policy provisions must be complied with. We think section 274.37 is not vulnerable to the challenge that it fails to furnish sufficient standards. Much must of necessity be left to the good judgment and discretion of the boards.

IV. Again we are asked to hold the section unconstitutional because it violates due process of law in that it permits the imposition of a greater tax burden upon the plaintiff and other taxpayers in the remaining portion of Castana, without giving them their day in court.

▉▉ This argument is answered in Wall v. County Board of Education, supra, in this language: "No one is deprived of any property without due process under chapter 275. The only question might be the changes in taxation created by reorganization. We have held this is not a violation of constitutional rights." Loc. cit. 249 Iowa 227, 86 N.W.2d 242. To the same effect, see the extensive discussion in Peterson v. Swan, 231 Iowa 745, 751 to 754 inclusive, 2 N.W.2d 70, 73 to 75 inclusive. See also Thie v. Consolidated Independent School District, 197 Iowa 344, 346, 347, 197 N.W. 75, 76. Changes in boundaries of school districts, or of incorporated towns, will almost invariably result in a change in the tax burdens of those whose property is affected. But the law presumes they receive the benefits accruing from the changes. In many cases this is not readily visible to

the naked eye of the taxpayer; he sees the damage to his pocketbook; the benefit is often chimerical. But it is a rule of necessity, and a burden he must bear for the general good. Nor is it essential to due process that notice of the proposed change be given, or the taxpayer given a hearing. Wertz v. City of Ottumwa, 201 Iowa 947, 952, 953, 208 N.W. 511, 513, 514. In that case we quoted with approval from Sharpless v. Mayor of Philadelphia, 21 Pa. 147, 166: " "* * * property is not *taken* when it is merely subjected, on a future contingency, to the liability of being taxed higher than it is at present. * * * As used in the Constitution, it has universally, in this state and elsewhere, been interpreted to mean a taking altogether, a seizure, a direct appropriation, dispossession of the owner.' "

V. Finally the plaintiff thinks the action of the joint boards in making the boundary change agreement was arbitrary or discriminatory and an abuse of discretion. The agreement recited that the change "would be for the best interests of all concerned." The plaintiff urges that Castana had already been compelled to abandon its high school; that the change meant a loss of $371,790 in taxable property to Castana, and a consequent increase of ten mills in the tax levy against the remaining property in the district; and that the remaining property would have to bear the entire burden of $39,000 in outstanding bonds.

We have often said that the question of boundaries is a legislative one, with which we will not interfere, absent a clearly demonstrated abuse of discretion. Green v. Webster County Board of Education, supra; Hubka v. County Board of Education, 251 Iowa 659, 664, 102 N.W.2d 167, 170; Independent School District of Malvern v. County Board of Education, 250 Iowa 1240, 1246, 98 N.W.2d 737, 741. In the latter case we said: "The essence of appellant's complaint in the parts of its petition stricken by the trial court was that the County Board did not exercise good judgment in reducing the size of the proposed district and substituting an inefficient plan for a good plan. The prayer would have the court substitute for the judgment of the County Board the judgment of the court as to the wisdom or practicability of the plan for the proposed district. This would

have violated the constitutional provision requiring the separation of powers."

There is a difference between a failure to adopt the plan which might be the best under the circumstances, or the adoption of an inefficient plan, and a clear abuse of discretion by the school board or boards. It would require a strong showing of abuse before we would have the right to interfere; and we find no such evidence here. The most that can be claimed for the plaintiff's case is that the boards have adopted a plan unfair to the Castana district, a plan which will leave its taxpayers with additional burdens. But this is an argument that is available in every reorganization case. In Allely v. Board of Education, 252 Iowa 1142, 1150, 1151, 110 N.W.2d 410, 415, is this pertinent language: "It must be presumed in such cases that the county board will carry out the legislative mandate and will attach the areas involved as in their best judgment will be best for all concerned and the overall reorganization requirement. We have often recognized that such boards are made up of persons of integrity and high purpose, that they strive to perform their duties in good faith and do so."

While plaintiff's evidence here tends to show additional burdens cast upon the Castana district, it does not go to the extent of proving an arbitrary or discriminatory abuse of discretion by the two boards. It must be remembered that the proposed agreement has been approved by the Monona and Harrison County boards. What the reasons for the action may have been we do not know. Perhaps transportation of students from the detached part of Castana was a consideration; or there may be other elements the boards thought decisive. And it may be they were mistaken and adopted a bad plan; but upon this we may not sit in judgment; we may not interfere.

VI. The trial court was of the opinion plaintiff and intervenors had adopted a wrong and unavailable remedy; and this question is much argued in the briefs. We preferred to decide the case upon the merits, and accordingly have made no pronouncement upon the question of procedures.—Affirmed.

All JUSTICES concur.