Lester **DOBROVOLNY**, Fred Anderson, Sam
Mann, Robert Erickson, Donald Masters,
Samuel Hall and Evan Davies, Appellants,

v.

G. L. **REINHARDT** et al., Appellees.

No. 53667.

Supreme Court of Iowa.

Jan. 13, 1970.

Patrick J. Morrow, Onawa, and Wunschel & Schechtman, Carroll, for appellants.

Prichard & Prichard, Onawa, for the Monona County Board of Education and the Individual Members thereof, appellees.

R. E. Franck, Denison, for the Maple Valley Community School District and the individual members thereof, appellees.

Sewell E. Allen, Onawa, for the West Monona Community School District and the individual members thereof, appellees.

James F. Gaukel, County Atty., Mapleton, for Frank Koontz and L. C. Myrland, appellees.

MOORE, Chief Justice.

This is an action in equity by electors and taxpayers alleging the Monona County Board of Education's action on May 3, 1968 attaching the Castana Community School District to two different districts pursuant to Code section 275.1 was not valid. The trial court found failure to comply with section 4, chapter 98, Acts 62d General Assembly did not invalidate the board's action and dismissed the petition seeking temporary and permanent injunctions. Plaintiffs have appealed. We affirm.

The Castana Community School District, a non high school district, located entirely within Monona County has been involved in various reorganization proceedings since 1961, including two appeals to this court, namely Davies v. Monona County Board of Education, 257 Iowa 985, 135 N.W.2d 663, and Castana Com. Sch. Dist. v. State Board of Pub. Instr., Iowa, 155 N.W.2d 522. At the time here involved the district was comprised of approximately 61 sections.

On March 22, 1968 the State Board of Public Instruction refused to approve an attachment plan of the area in Castana which had been adopted by the Monona County Board. Being aware of the legislative mandate in Code chapter 275 that all non high school districts be attached to high school districts by July 1, the Monona board was faced with the problem of adopting a satisfactory attachment plan.

On April 12, 1968 at a regular monthly session of the Monona Board in the office of the County Superintendent attachment of the Castana District was discussed. April 29, 1968 the board met in a special session and again discussed the attachment problem. One member was absent. It was agreed the board meet again on May 3 at 8

p. m. if all members could attend, otherwise to meet on May 6th.

On May 3, 1968 the Monona County Board of Education with all members present met at 8 p. m. in its usual meeting place, the office of the County Superintendent. Entrance thereto was open to the public. By unanimous vote members of the board, as authorized by Code section 275.1, adopted a plan attaching approximately 51 sections of the Castana District to Maple Valley Community School District and 10 sections to West Monona Community School District, thereby causing Castana Community School District to become extinct. Said attachment plan and the Monona Board's resolutions were approved by the Iowa State Board of Public Instruction on May 17, to become effective July 1, 1968. An appeal to the district court was taken by an alleged aggrieved party and was pending at trial time of the case at bar.

■ Attachment under section 275.1 was a last-ditch method of complying with the legislative mandate that every area of the state be included within a 12-grade district before the statutory deadline. It was resorted to only after all else had failed to accomplish that end. We have heretofore held such attachment is permitted to be accomplished without notice or hearing. Board of Education of the Green Mountain Independent School District v. Iowa State Bd. of Public Instr., Iowa, 157 N.W. 2d 919, 924, and citations.

Appellants recognize our earlier holdings but assert the Monona Board's action was illegal in view of the provisions of chapter 98, Acts 62d General Assembly, which became effective July 1, 1967. It provides: "GOVERNMENTAL MEETINGS OPEN TO PUBLIC. S.F. 536.

"AN ACT requiring meetings of governmental agencies to be open to the public.

"Be It Enacted by the General Assembly of the State of Iowa:

"Section 1. All meetings of the following public agencies shall be public meetings open to the public at all times, and meetings of any public agency which are not open to the public are prohibited, unless closed meetings are expressly permitted by law.

"1. Any board, council, or commission created or authorized by the laws of this state.

"2. Any board, council, commission, trustees, or governing body of any county, city, town, township, school corporation, political subdivision, or tax-supported district in this state.

"3. Any committee of any such board, council commission, trustees, or governing body.

"Wherever used in this Act, 'public agency' or 'public agencies' includes all of the foregoing, and 'meeting' or 'meetings' includes all meetings of every kind, regardless of where the meeting is held, and whether formal or informal.

"Sec. 2. Every citizen of Iowa shall have the right to be present at any such meeting. However, any public agency may make and enforce reasonable rules and regulations for conduct of persons attending its meetings and situations where there is not enough room for all citizens who wish to attend a meeting.

"Sec. 3. Any public agency may hold a closed session by affirmative vote of two-thirds (⅔) of its members present, when necessary to prevent irreparable and needless injury to the reputation of an individual whose employment or discharge is under consideration, or to prevent premature disclosure of information on real estate proposed to be purchased, or for some other exceptional reason so compelling as to override the general public policy in favor of public meetings. The vote of each member on the question of holding the closed session and the reason for the closed session shall be entered in the minutes, but the statement of such reason need not state

the name of any individual or the details of the matter discussed in the closed session. Any final action on any matter shall be taken in a public meeting and not in closed session, unless some other provision of the Code expressly permits such action to be taken in a closed session. No regular or general practice or pattern of holding closed sessions shall be permitted.

"Sec. 4. Each public agency shall give advance public notice of the time and place of each meeting, by notifying the communications media or in some other way which gives reasonable notice to the public. When it is necessary to hold an emergency meeting without notice, the nature of the emergency shall be stated in the minutes.

"Sec. 5. Each public agency shall keep minutes of all its meetings showing the time and place, the members present, and the action taken at each meeting. The minutes shall be public records open to public inspection.

"Sec. 6. This Act does not apply to any court, jury, or military organization. ·

"Sec. 7. The provisions of this Act and all rights of citizens under this Act may be enforced by mandamus or injunction, whether or not any other remedy is also available.

"Sec. 8. Any person knowingly violating or attempting to violate any provision of this Act shall be guilty of a misdemeanor and upon conviction shall be punished by a fine of not more than one hundred (100) dollars."

The Monona County Board of Education meeting on May 3, 1968 was held without compliance with section 4 of said chapter.

The sole question presented in this injunction proceeding is whether failure to comply with section 4, chapter 98, Acts of the 62d G.A. makes invalid or void an attachment made pursuant to Code section 275.1. Like the trial court we answer the question in the negative.

■ We have not heretofore been asked to interpret the meaning of chapter 98 above set out. In doing so we must ascertain and give effect to the intention of the legislature. Under these circumstances we are obliged to examine both the language used and the purpose for which the legislation was enacted. Wilson v. Iowa City, Iowa, 165 N.W.2d 813, 822; Dingman v. City of Council Bluffs, 249 Iowa 1121, 1126, 90 N.W.2d 742, 746, and citations.

■ In Wilson v. Iowa City, supra, and Ritter v. Dagel, Iowa, 156 N.W.2d 318, 321, we quote this from Bruce v. Wookey, Iowa, 154 N.W.2d 93, 94: "Each section must be construed with the act as a whole and all parts of the act considered, compared and construed together."

■ In construing a statute, it is important to consider the state of the law before it was enacted and the evil it was designed to remedy, and it is the business of courts to so construe an act as to suppress the mischief and advance the remedy. In arriving at the intention of the legislature, the subject matter, effect, consequence, and the reason and spirit of the statute must be considered, as well as words, in interpreting and construing it. Overbeck v. Dillaber, Iowa, 165 N.W.2d 795, 797, and citations.

■ Monona County Board of Education is a public agency clearly within the requirements of section 1, chapter 98, Acts of the 62d G.A. No emergency was claimed and its meeting of May 3 was required to be open to the public. It was so open but the evidence is undisputed no advance public notice was given as required by section 4 which provides notice "by notifying the communications media or in some other way which gives reasonable notice to the public." It is not a specific notice requirement to particularly interested parties, required as a jurisdictional matter.

■ It is clear the purpose of chapter 98 is to prohibit secret or "star chamber" sessions of public bodies, to require such

meeting be open and to permit the public to be present unless within the exceptions stated therein. The statute does not require the public body to allow any individual or group to be heard on the subject being considered.

What was the effect of Monona County Board of Education's failure to comply with section 4? This is determined by all the provisions of chapter 98.

■ Section 7 provides the rights of citizens under the act may be enforced by mandamus or injunction. Mandamus is not here involved. Before a writ of mandamus can be granted performance must have been demanded. Code section 661.9. No prior demand is claimed here.

■ Injunctions are governed by rules 320 to 330, Rules of Civil Procedure. See also chapter 664, Code, 1966. Rights already lost and wrongs already committed are not subject to injunctive relief, especially when there is no showing the wrong will be repeated. Allely v. Board of Education, 252 Iowa 1142, 1151, 110 N.W.2d 410, 415; Universal Loan Corp. v. Jacobson, 212 Iowa 1088, 1091, 237 N.W. 436, 437, and citations.

■ Plaintiffs here are not seeking to enjoin future meetings of the Monona board without the giving a public notice. The wrong for which they seek a remedy has been committed.

Section 8 of the Act provides the only other remedy. It states: "Any person knowingly violating or attempting to violate any provisions of this Act shall be guilty of a misdemeanor * * *."

■ Chapter 98 limits the remedies and cannot be reasonably interpreted as providing violation of the provisions thereof render the actions of the public body void or voidable. If the legislature so desired the act could have been easily written to so provide.

Plaintiffs are not entitled to the relief sought.

Affirmed.

LARSON, SNELL, STUART and Le-GRAND, JJ., concur.

BECKER and MASON, JJ., dissent.

RAWLINGS and REES, JJ., take no part.

BECKER, Justice (dissenting)

I respectfully dissent.

The majority recognizes the purpose of newly enacted chapter 98, Acts of the 62nd General Assembly. But by refusal to grant injunctive relief the decision robs the statute of most of its efficacy.

I agree that failure to comply with the act does not render the school board's action void. It does make the action voidable and subject to being set aside by prompt attack as provided by statute. Otherwise the provision for actions by mandamus and injunction have no meaning.

We cannot insist the action be by direct appeal from the action of the governmental agency. First, the evil under attack is withholding public information. Therefore, the interested parties are without knowledge of the illegal action for a period of time that will vary with circumstances and the time for such type appeal may be gone. Second, no specific avenue of direct appeal is provided. Third, and contrariwise, two avenues of independent action are provided; i. e., mandamus and injunction, which shall be in addition to other remedies.

I cannot agree that our rules relating to injunctive relief are so narrow as to make the remedy sought ineffective in this situation. The statement, "Rights already lost and wrongs already committed are not subject to injunctive relief, especially when

there is no showing the wrong will be repeated", is not all of the applicable Iowa law on the subject. In Falcon v. Boyer, 157 Iowa 745, 752, 142 N.W. 427, 430, we said: "It is next contended that the decree of the court is wrong in that it contained a mandatory order on the defendant. Upon this point we have to say that, while the office of an injunction primarily is to restrain, and not to compel, the performance of an act, yet, if it be necessary in order to make the restraining order effectual, the party against whom it is issued may be required to perform some affirmative act which will make effectual the main and controlling purpose of the order. It can not be maintained that, because an injunction primarily is to restrain, and not to compel, the performance of an act, it can not be used, when the effect of yielding obedience thereto requires the performance of some affirmative act. That is, the court may grant an injunction, the essential nature of which is to restrain, although, in yielding obedience to the restraint, the party may be required to perform some affirmative act. Otherwise often the injunction would be ineffectual. In support of this see Allen v. Stowell, 145 Cal. 666, 79 Pac. 371, 68 L.R.A. 223, 104 Am.St.Rep. 80; Troe v. Larson, 84 Iowa 649, 51 N.W. 179, 35 Am.St.Rep. 336. In this last case it is said: 'A mandatory order is not to correct a wrong of the past, in the sense of redress for the injury already sustained, but to prevent further injury. * * *.' "

More recently in Iowa Natural Resources Council v. Van Zee, (1968), Iowa, 158 N.W.2d 111, 115, we again recognized mandatory injunctions: "The granting of injunctive relief in most cases is limited to the restraining of actual or threatened acts injurious to the complainant's rights and is not to compel the undoing of an injury. Hanna v. Nowell, (Mo.App.), 330 S.W.2d 595; 28 Am.Jur., Injunctions, §§ 3, 17. Such injunctions are commonly called prohibitory injunctions and have the effect of preserving the status quo and operate to restrain the commission or continuance of an act. Schubach v. McDonald, 179 Mo. 163, 78 S.W. 1020, 65 L.R.A. 136, 101 Am. St.Rep. 452, writ of error dismissed in Schubach v. Hough, 196 U.S. 644, 25 S.Ct. 797, 49 L.Ed. 632. Apparently this was the type of injunction visualized in paragraph 4 of this section.

"However, a court of equity can and in a proper case will award mandatory injunctive relief which will compel some affirmative act, thus going beyond mere restraint. Falcon v. Boyer, 157 Iowa 745, 142 N.W. 427. Although courts look upon the latter with disfavor and such injunctions are granted with caution in cases of great necessity, they may be proper. Black v. Jackson, 177 U.S. 349, 20 S.Ct. 648, 44 L.Ed. 801; Lyle v. City of Chicago, 357 Ill. 41, 191 N.E. 255 [93 A.L.R. 1492] 28 Am. Jur., Injunctions, § 20. This type of injunction has reasonable application under paragraph 3 of this section."

This case is important because it sets the tone of the enforcement of a new statute which articulates an important legislative policy. The majority says the statute entitled Governmental Meetings Open To The Public means what it says. It then holds that because the meeting is over and done with the courts are powerless to (or will not) interfere, even though the legislature plainly indicated the machinery for interference. This will always be the case. By the very nature of the problem relief cannot be sought until after the meeting has been held.

The majority approach is wrong because it allows the governmental agency to act in plain violation of the law without fear of effective restraint. Under this interpretation the legislature has created the right to be informed but we reject the remedy. The criminal sanctions are not the only restraint provided in the statute.

I would hold the action of the school board voidable. The attack on the action taken at the illegal meeting was timely made. Such action should therefore be

voided and set aside. The board has the right to take further action *at a legal meeting*. Whether the board elects to take the same action or a different tack is immaterial.

Only by such a holding can we give force and effect to the plain mandate of the legislature.

MASON, J., joins in this dissent.